In re Everett MILLS, Debtor.

Joseph I. WITTMAN, Trustee, Plaintiff,

v.

STATE FARM LIFE INSURANCE COMPANY, INC., Defendant,

and

Everett Mills, Intervenor.

Bankruptcy No. 92–41070–7.
Adv. No. 93–7176.
No. 94–4084–SAC.

United States District Court,
D. Kansas.

Nov. 15, 1994.

William E. Metcalf, Metcalf & Justus, Topeka, KS, for Everett Mills.

Wayne A. Robinson, State Farm Ins. Companies, Law Dept., Bloomington, IL, Cynthia J. Sheppeard, Heck, Hendrix, Wright & Sheppeard, Topeka, KS, for State Farm Life Ins. Co. Inc.

Joseph I. Wittman, Trustee, Topeka, KS, pro se.

## MEMORANDUM AND ORDER

CROW, District Judge.

This bankruptcy appeal presents the following issue: Is there an unauthorized postpetition transfer under 11 U.S.C. § 549 when the debtor issues the check before filing for bankruptcy but the check is not honored by the drawee bank until after the filing? The trustee here commenced an adversary action to avoid the debtor's transfer of $2,500 by check to State Farm Life Insurance Company, Inc. ("State Farm") as an unauthorized postpetition transfer pursuant to 11 U.S.C. § 549. The intervenor appeals the bankruptcy court's order granting summary judgment in favor of the trustee. *In re Mills,* 167 B.R. 663 (Bankr.D.Kan.1994).

In his first brief, the intervenor says he does not want oral argument, but he changes his mind and requests it in his reply brief. Other than positing that the issues are complex and important, the intervenor does not demonstrate any need for oral argument. In his brief, the trustee does not seek oral argument and does not raise issues different from those considered by the bankruptcy court. The parties have adequately identified and addressed the issues in the written briefs. Because oral argument is not likely to assist the court materially, the intervenor's request is denied.

The relevant facts are not disputed. The debtor issued a check on May 29, 1992, to State Farm in the amount of $2,500 in payment of a loan against his life insurance policy. State Farm received the check on June 2, 1992. The check did not clear the debtor's credit union until June 3, 1992. The debtor filed for bankruptcy on June 2, 1992, the day before the check was honored by the drawee credit union.

The plaintiff Wittman was appointed trustee for the bankruptcy estate. He filed this adversary action against State Farm seeking to recover this check payment pursuant to 11 U.S.C. § 549. State Farm answered but did not actively defend the action leaving that to the debtor who had intervened. In response to the trustee's motion for summary judgment, the debtor agreed the facts were undisputed and asked the bankruptcy court to decide the issues as a matter of law.

In relevant part, § 549 provides:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

Section 549(a) authorizes, subject to the exceptions in subsections (b) and (c), a trustee's

avoidance of a (1) transfer of, (2) property of the estate, (3) occurring after the bankruptcy petition is filed, if (4) the transfer is authorized only under §§ 303(f) or 542(c) or is not authorized by the Bankruptcy Code or by the court.

The bankruptcy court found that the debtor's credit union account became property of the estate upon the debtor filing for bankruptcy. The court relied on *Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), in holding that the transfer occurred postpetition when the drawee bank honored the debtor's check. 167 B.R. at 664. The bankruptcy court concluded that the transfer here was authorized only by § 542(c) and that the stay exception provided in § 362(b)(11) did not authorize the transfer. *Id.* Thus, the court entered judgment for the trustee against State Farm in the amount of the postpetition payment, $2500.

The debtor appeals arguing the bankruptcy court erred in its legal conclusions. First, the debtor contends the Supreme Court's holding and reasoning in *Barnhill* is inapplicable to § 549. Second, the debtor believes that his payment was not prohibited by Code and that State Farm's presentment of the check was authorized under 11 U.S.C. § 362(b)(11). In short, the debtor concedes that his credit union account became property of the estate upon filing for bankruptcy. He also does not take issue with the fact that a transfer of estate property occurred. The debtor, however, disputes that the transfer occurred postpetition and that it was authorized only under § 542(c).

■ The district court sits as an appellate court in this proceeding. *See* Bankruptcy Rule 8013. The bankruptcy court's legal determinations are reviewed de novo. *In re Raymond,* 987 F.2d 675, 676 (10th Cir.1993).

■ When does a payment by check accomplish a transfer of property? In *Barn-*

*hill,* the Supreme Court held that in determining whether a transfer occurred within the preference period of § 547(b)(4)(A), a transfer made by check is deemed to occur not when the recipient is presented with the check, but later when the drawee bank honors the check. 503 U.S. at ——, 112 S.Ct. at 1387, 118 L.Ed.2d at 44. The Court's reasoning in *Barnhill* is tethered not so much to the narrow scope of § 547(b)(4)(A) but to the general definition of "transfer" found at 11 U.S.C. § 101(54).[1]

The underpinning of *Barnhill* is the general law of check transactions found in the Uniform Commercial Code. The Supreme Court began its analysis with a summary of that law and then rejected the notion that a check could be an unconditional transfer of property:

> [R]eceipt of a check gives the recipient no right in the funds held by the bank on the drawer's account. Myriad events can intervene between delivery and presentment of the check that would result in the check being dishonored. The drawer could choose to close the account. A third party could obtain a lien against the account by garnishment or other proceedings. The bank might mistakenly refuse to honor the check.

112 S.Ct. at 1389–91, 118 L.Ed.2d at 46–47 (footnote omitted).[2] From that discussion, the Court drew the conclusion that no transfer as defined at 11 U.S.C. § 101(54) occurs until the check clears the drawee bank:

> We thus believe that when the debtor has directed the drawee bank to honor the check *and* the bank has done so, the debtor has implemented a "mode, direct or *indirect* ... of disposing of property or an interest in property." 11 U.S.C. § 101(54) (emphasis added). For the purposes of payment by ordinary check, therefore, a

---

1. Section 101(54) provides that " 'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

2. This summary accords with Kansas law. Specifically, K.S.A.1993 Supp. 84–3–408 provides:

   A check or other draft does not of itself operate as an assignment of funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until the drawee accepts it.

"transfer" as defined by § 101(54) occurs on the date of honor, and not before.

112 S.Ct. at 1390, 118 L.Ed.2d at 47.

The Court acknowledged that "transfer" is defined broadly at § 101(54) to include all modes of transfer, even a "conditional" mode. 112 S.Ct. at 1390, 118 L.Ed.2d at 47. The definition, however, encompasses only those modes for "disposing of or parting with property or with an interest in property." 11 U.S.C. § 101(54). The recipient of a check gains, at most, a *"contingent* cause of action" against the drawer and receives no right in the drawer's account or right against the drawee bank. 112 S.Ct. at 1390, 118 L.Ed.2d at 47. This chose in action against the debtor is not a conditional right to property or an interest in property. *Id.* "To treat ... [the] nebulous right to bring suit as a 'conditional transfer' of the property would accomplish a near-limitless expansion of the term 'conditional.'" 112 S.Ct. at 1391, 118 L.Ed.2d at 48. Because the payee receives no interest in the drawer's property until the check is honored, the mere delivery of the check does not constitute a "transfer" as defined at § 101(54).

The Court does not suggest that § 547 affected its initial conclusion that a transfer occurs only when the check is honored. In discussing the particular terms of § 547, the Court said simply this:

Finally, we note that our conclusion that no transfer of property occurs until the time of honor is consistent with § 547(e)(2)(A). That section provides that a transfer occurs at the time the transfer "takes effect between the transferor and the transferee...." For the reasons given above, and in particular because the debtor in this case retained the ability to stop payment on the check until the very last, we do not think that the transfer of funds in this case can be said to have "taken effect between the debtor and petitioner" until the moment of honor.

112 S.Ct. at 1391, 118 L.Ed.2d at 48. The opinion plainly reveals that the Supreme Court reached its conclusion on "transfer" without reliance on the terms or scope of § 547(b). The Court looked to § 547(e)(2)(A) only to insure that the definition and rule were compatible with § 547(b).

The intervenor's arguments for exempting § 549 from the general rule in *Barnhill* that no transfer of property occurs until the time of honor are not persuasive. The Supreme Court did not rely upon § 547(e) for this rule. Beyond saying the rule was consistent with § 547(e), the Court did not look to this subsection for support. That § 549 lacks a subsection comparable to § 547(e), therefore, is of no significance.

Upon receipt of the debtor's check, State Farm did not gain "an absolute right ... to obtain payment if the funds are in the account...." (Intervenor's Brief, Dk. 3 at 9). Prior to presentment, State Farm held the check subject to the same "myriad events" discussed in *Barnhill.* The drawer or even the trustee could have stopped payment or closed the account. Other checks, liens, or other proceedings could have exhausted or frozen funds in the account requiring the drawee bank to dishonor the check. The drawee bank might have dishonored the check mistakenly. This is a far cry from any "absolute right ... to obtain payment."

The bankruptcy court below and another bankruptcy court agree that the rule of "treating the date of honor as the date of the transfer" stated in *Barnhill* is appropriate for § 549 purposes. *Mills,* 167 B.R. at 664; *see In re Rainbow Music, Inc.,* 154 B.R. 559, 561–62 (Bankr.N.D.Cal.1993); *Contra Quinn Wholesale, Inc. v. Northern,* 873 F.2d 77 (4th Cir.) (a pre-*Barnhill* case), *cert. denied,* 493 U.S. 851, 110 S.Ct. 151, 107 L.Ed.2d 109 (1989). The rationale found in *Barnhill* applies with equal force to postpetition transfers under § 549. *Id.* If the same rule were not used, a safe harbor would be created for checks that did not qualify as prepetition transfers under § 547 or as postpetition transfers under § 549. *Rainbow Music,* 154 B.R. at 561–62. The intervenor points to nothing in the Code or in legislative history to suggest that Congress intended such a safe harbor. Nor does the intervenor identify a policy reason for making such checks immune. *See Rainbow Music,* 154 B.R. at 562.

■ What Code provision, if any, authorized this particular transfer of property? The intervenor argues the transfer was authorized by an exception to the automatic stay, in particular:

(b) The filing of a petition under section 301, 302, or 303 of this title, . . . , does not operate as a stay—

. . . .

(11) under subsection (a) of this section, of the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument. . . .

11 U.S.C. § 362(b)(11). The intervenor contends that if the transfer does not violate the § 362 automatic stay then the trustee may not avoid it under § 549. The intervenor confuses the different purposes and functions of these Code sections.

■ The bankruptcy court below correctly distinguished the different sections and their distinct functions:

[E]xcepting the presentment of negotiable instruments from the automatic stay [§ 362(b)(11) ] and permitting the innocent transfer of estate money [§ 542(c) ] does not mean the estate money received postpetition may be retained. The protection provided by § 542(c) is expressly limited to permitting a financial institution unaware of the bankruptcy to transfer estate property "with the same effect as to the entity making such transfer or payment as if the case" had not been filed; it says nothing about the recipient of the transfer. . . . [A]lthough it is not a stay violation, presentment does not carry with it a right to have the instrument honored. . . . The stay exception created by § 362(b)(11) does not authorize any transfer of estate property, it merely permits the presenter's performance of an act that would otherwise be a stay violation.

167 B.R. at 664–65. Section 362(b)(11) does not authorize any transfer of rights in the debtor's account; it merely allows for the presentment of a check without violating the stay. The intervenor's reliance on *In re Roete*, 936 F.2d 963 (7th Cir.1991), is misplaced. The only issue there was whether a creditor's postpetition presentment of a check violated the automatic stay; it did not consider whether a creditor is entitled to keep any of the debtor's funds obtained upon cashing the check. 936 F.2d at 966.

While recently tackling the issue of whether violations of the automatic stay are void or voidable the Ninth Circuit explained the distinct roles of §§ 362 and 549:

[A] straightforward analysis of section 549 reveals that it is not intended to cover the same type of actions prohibited by the automatic stay nor rendered moot by section 362's voiding of all automatic stay violations. Section 549 applies to unauthorized transfers of estate property which are not otherwise prohibited by the Code. (Citations omitted). In most circumstances, section 549 applies to transfers in which the debtor is a willing participant. (Citation omitted) . . . .

Section 362's automatic stay does not apply to sales or transfers of property initiated by the debtor. Thus, section 549 has a purpose in bankruptcy beyond the potential overlap with section 362. In other words, the automatic stay can void any violation and still leave section 549 with a valid and important role in bankruptcy. Section 549 exists as a protection for creditors against unauthorized debtor transfers of estate property.

*In re Schwartz*, 954 F.2d 569, 573–74 (9th Cir.1992); *see In re Hill*, 156 B.R. 998, 1007 (Bankr.N.D.Ill.1993). In short, §§ 362 and 549 apply to different transactions, and § 549 "picks up where the automatic stay leaves off." *In re Schwartz*, 954 F.2d at 574. This reasoning fully supports the bankruptcy court's conclusion in the instant case.

As established above, the transfer occurred when the credit union honored the debtor's check issued to State Farm. This transfer was authorized only under § 542(c) which protects, among others, a drawee who in good faith honors the check and pays with funds from the debtor's account. By the express terms of § 549, a trustee may avoid a postpetition that is authorized only under § 542(c). "Section 549(a)(2)(A) restricts the impact of section 542(c) to protecting the transferor (agent, bailee, bank, *inter alia* ) by

enabling the trustee to avoid the postpetition transfer and recover the property transferred from the transferee under section 550." 4 *Collier on Bankruptcy* ¶ 549.03 at 549–10 (15th ed. 1990). In sum, the trustee was entitled to summary judgment, because the transfer occurred after the commencement of the case and was authorized only under § 542(c). The bankruptcy court did not err in granting summary judgment for the trustee.

IT IS THEREFORE ORDERED that the bankruptcy court's order of May 11, 1994, published at *In re Mills*, 167 B.R. 663 (Bankr.D.Kan.1994), is affirmed.