# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

_____

No. 04-6038WM

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Coyita Voncile Thomas, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Coyita Voncile Thomas, | * | |
| | * | |
| Plaintiff-Appellant, | * | Appeal from the United States |
| | * | Bankruptcy Court for the Western |
| v. | * | District of Missouri |
| | * | |
| Money Mart Financial Services, | * | |
| Inc., | * | |
| | * | |
| Defendant-Appellee. | * | |
| | * | |

_____

Submitted: November 10, 2004
Filed: December 10, 2004 (Corrected December 13, 2004)

_____

Before KRESSEL, Chief Judge, SCHERMER and MAHONEY, Bankruptcy Judges.

_____

KRESSEL, Chief Judge.

The plaintiff, Coyita Voncile Thomas, who is also the debtor in this chapter 7 case, appeals from the bankruptcy court's[1] judgment declining to award her damages based on Money Mart Financial Services, Inc.'s violation of the automatic stay. Because we agree with the bankruptcy court that Money Mart did not violate the automatic stay, we affirm.

BACKGROUND

On November 15, 2003, Thomas obtained four separate loans from Money Mart, each in the amount of $50.00, for a total of $200.00. In exchange, Thomas gave Money Mart four checks, each in the amount of $77.00, postdated to December 15, 2003. It was the parties' expectation that Thomas would be paid on or about that date, which would provide sufficient funds for the checks to be paid. Such transactions are commonly referred to as "payday loans." On November 18th, Thomas filed her chapter 7 petition. On the same date, her attorney sent Money Mart a copy of a notice indicating that Thomas had filed a bankruptcy petition. Sometime on or about November 20, 2003, Money Mart also received from the clerk a notice of commencement of the debtor's case.

On approximately December 17, 2003, the four checks were presented for payment to the debtor's bank. Whether Money Mart presented the checks itself at the debtor's bank or whether, as is more likely, Money Mart deposited the checks in its bank and the checks were presented to the debtor's bank through normal banking channels, we are not sure because the record is silent. The distinction makes no difference in this case.

---

[1] The Honorable Dennis R. Dow, United States Bankruptcy Judge for the Western District of Missouri.

2

On January 15, 2004, Thomas filed a complaint under 11 U.S.C. §362(h) against Money Mart asking for various forms of relief, all predicated on Thomas's claim that Money Mart had violated the automatic stay when it presented her checks for payment. Money Mart answered and a trial was held on April 22, 2004. In an opinion dated and entered on June 14, 2004, the bankruptcy court held that the actions of Money Mart in presenting the checks were excepted from the automatic stay by operation of 11 U.S.C. § 362(b)(11).

While the issue of the avoidability of the payment of the checks as an unauthorized postpetition transfer was not pled in the plaintiff's complaint, the issue was raised at trial and Money Mart volunteered to return to the debtor the funds it had received from the post-dated checks. The bankruptcy court held that the payment of the checks postpetition was indeed an unauthorized postpetition transfer avoidable by the trustee under 11 U.S.C. § 549(a). The bankruptcy court went on to hold that because the trustee had not attempted to avoid the transfers, that the debtor could, under 11 U.S.C. § 522(h)(1) and (2).

As a result, the bankruptcy court declined to award Thomas damages for violating the automatic stay. It did, however, order Money Mart to return the sum of $308.00 to the debtor. On June 16, 2004, the clerk entered a judgment pursuant to the court's opinion and order. Thomas appealed from the June 14, 2004, order. While she more properly should have appealed from the judgment, we do not think that this mistake deprives us of jurisdiction.

STANDARD OF REVIEW

The bankruptcy court's determination that the presentment of the checks was excepted from the automatic stay is a conclusion of law, which we review *de novo*. *Gordon v. Hines (In re Hines)*, 147 F.3d 1185 (9th Cir. 1998).

DISCUSSION

The parties do not really dispute any of the relevant facts in this proceeding and there is agreement on virtually all of the applicable law. They agree, for example, that presentment of the checks is covered by various provisions of the automatic stay, including § 362(a)(3) which prohibits "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate" and § 362(a)(6) which prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." They agree that the resolution of this proceeding revolves around the applicability of § 362(b)(11) which excepts from operation of the automatic stay "the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument." They also agree that the four checks were negotiable instruments.

The dispute then narrows itself to whether or not what Money Mart did constitutes "presentment" of the checks. At first blush the answer to this question seems obvious. Under any commonly understood use of the word "presentment," that is exactly what Money Mart did. In order to obtain payment of the checks, it presented them, either directly or indirectly, to Thomas's bank. However, because there is no definition of the word "presentment" in the Bankruptcy Code, Thomas urges us to look at Missouri law, which defines "presentment" to mean:

> a demand by or on behalf of a person *entitled to enforce an instrument* (i) to pay the instrument made to the drawee or a party obliged to pay the instrument, or in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee.

4

Mo. Rev. Stat § 400.3-501(a)(emphasis added).  Missouri law further provides:

> Except as stated in subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following: (1) a defense of the obligor based on . . . (iv) *discharge of the obligor in insolvency proceedings.* (emphasis added)

Mo. Rev. Stat. § 400.3-305(a)(1)(iv).

It is clear to us that the Missouri statute says that, if an obligor has received a discharge in bankruptcy, then the holder of a negotiable instrument is no longer a person entitled to enforce it.  When Money Mart presented the checks, Thomas had not received her discharge and whether she would or not was open to question.  Some courts have suggested, as Thomas does, that the fact that the debt may later be discharged, brings into play the Missouri statute vitiating the holder's status as a person entitled to enforce an instrument.  *See, e.g., Hines v. Gordon (In re Hines)*, 198 B.R. 769 (B.A.P. 9th Cir. 1996), *rev'd, Gordon v. Hines (In re Hines)*, 147 F.3d 1185 (9th Cir. 1998).  We simply cannot agree.  The statute says nothing of the kind and such a reading would virtually destroy the applicability of the exception to the automatic stay and is certainly inconsistent with its language.  It would put presenters of checks in the position of trying to make judgments about whether or not debtors **would** receive a discharge in the future and, if so, whether or not the debtor's debt to it would be excepted from such a discharge.  Such an analysis is highly impracticable and would render the exception to the automatic stay virtually meaningless.  We disagree with the 9th Circuit Bankruptcy Appellate Panel's summary conclusion otherwise in *Hines* and agree with the Seventh Circuit Court of Appeals' analysis in *Roete v. Smith (In re Smith)*, 936 F.2d 963 (7th Cir. 1991) and the Ninth Circuit Court of Appeals' opinion in *Hines, supra.*

Thus, we agree with the bankruptcy court that, under Missouri law, Money Mart was a person entitled to enforce the checks and thus its demand for payment constituted presentment covered by the exception to the automatic stay.

Alternatively, Thomas urges us to limit the applicability of the exception to automatic stays to situations where the holder of a negotiable instrument wants to present an instrument with full expectation of its dishonor as a prerequisite to enforcing it against another party. *See, In re Jastrem*, 224 B.R. 125, 127 (Bankr. E.D. Cal. 1998), *Wittman v. State Farm Life Ins. Co. (In re Mills)*, 176 B.R. 924, 928 (D. Kan.1994). Unfortunately, we see nothing in the statute to justify such a limitation and it is our duty to apply the statute as written. Besides, Thomas's construction makes little sense. With over a million bankruptcies filed every year in this country, millions of checks, written prepetition, are presented postpetition. It seems to us to be bad public policy to hold that these millions of transactions violate the automatic stay in the face of a clear indication from Congress that it intended that they not.

## CONCLUSION

We conclude that Money Mart's presentment of Thomas's checks were excepted from the automatic stay and thus we affirm the bankruptcy court's decision declining to award her damages.

———————————————————————

6