ELECTRONIC CITATION: 2008 FED App. 0020P (6th Cir.)
File Name: 08b0020p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re: JANICE B. MEADOWS,

        Debtor.

_____

BUCKEYE CHECK CASHING, INC.
d/b/a CheckSmart,

        Appellant,

   v.

JANICE B. MEADOWS,

        Appellee.

_____

Nos. 08-8005 and 08-8024

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Western Division at Dayton.
No. 06-30887

Argued: August 12, 2008

Decided and Filed: November 12, 2008

Before: GREGG, McIVOR, and PARSONS, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Daniel M. Anderson, SCHOTTENSTEIN, ZOX & DUNN CO., LPA, Columbus, Ohio, for Appellant. Lester R. Thompson, Dayton, Ohio, for Appellee. **ON BRIEF:** Daniel M. Anderson, Tyson A. Crist, SCHOTTENSTEIN, ZOX & DUNN CO., LPA, Columbus, Ohio, for Appellant. Lester R. Thompson, Dayton, Ohio, for Appellee.

---

**OPINION**

---

MARCIA PHILLIPS PARSONS, Chief Bankruptcy Appellate Panel Judge. Buckeye Check Cashing, Inc. d/b/a CheckSmart ("Buckeye") appeals an order of the bankruptcy court holding that Buckeye violated the automatic stay when, after receiving notice of the Debtor's bankruptcy filing, it refused to unconditionally return funds received from the post-petition presentment of the Debtor's check. Because we conclude that the funds held by Buckeye were no longer property of the estate and that no stay violation occurred, we reverse the order of the bankruptcy court.

## I.   ISSUE ON APPEAL

The issue presented by this appeal is whether a creditor willfully violates the automatic stay when, after it receives notice of a debtor's bankruptcy filing, it retains funds received from the post-petition presentment of a debtor's check and places conditions upon the return of the funds.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court.  28 U.S.C. §§ 158(b)(6), (c)(1).  A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  The bankruptcy court's order determining that Buckeye violated the automatic stay is a final order.  *In re Perrin*, 361 B.R. 853, 855 (B.A.P. 6th Cir. 2007).

Because there is no dispute regarding the facts, this appeal presents only legal questions. Conclusions of law are reviewed de novo.  *In re DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir. 2007). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007).

### III.  FACTS

On April 9, 2006, Janice B. Meadows ("Debtor") obtained a $400 "payday" loan from Buckeye.  In exchange for the $400 loan, the Debtor gave Buckeye a post-dated check for $460 to pay the principal of the loan plus interest.  Buckeye agreed to hold the check until the later date of April 23, 2006.

On April 16, 2006, the Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code.[1]  Buckeye was listed on Schedule F as a creditor holding an unsecured, non-priority claim for $460.  On April 22, 2006, the Bankruptcy Noticing Center served by first class mail a notice of the bankruptcy filing upon the scheduled creditors, including Buckeye at the Dayton, Ohio address listed on Schedule F.  On April 23, 2006, Buckeye presented the Debtor's check for payment pursuant to the parties' loan agreement.

On June 5, 2006, counsel for the Debtor sent a letter to Buckeye at the address listed on Schedule F requesting an immediate refund of the funds received by Buckeye as a result of negotiation of the check.  Debtor's counsel received no response to his letter and the funds were not returned.  Nearly one year later, on June 11, 2007, the Debtor filed a motion seeking an award of compensatory and punitive damages, including attorney fees and costs, against Buckeye for its alleged violation of the automatic stay in presenting the check for payment and failing to return the funds to the Debtor (the "Motion").  Counsel for the Debtor sent the Motion to several addresses for Buckeye, including an address in Texas.  Buckeye filed an objection to the Motion, asserting that it had not been aware of the Debtor's bankruptcy filing at the time it presented the Debtor's check for payment, and that it never received counsel's June 5, 2006 letter, except as an exhibit to the Motion. Buckeye further argued that while the post-petition presentment of a check may be avoidable pursuant to 11 U.S.C. § 549, it was not a violation of the automatic stay because of the exception provided by 11 U.S.C. § 362(b)(11).

---

[1] Because the Debtor filed her bankruptcy case after October 17, 2005, the case is governed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  All statutory references are to BAPCPA, 11 U.S.C. §§ 101-1532 (2005), herein "§ ___," unless otherwise noted.

The bankruptcy court held a hearing on November 29, 2007, at which the Debtor and Pagle Helterbrand ("Helterbrand"), Vice President of Corporate Operations for Buckeye, testified. According to Helterbrand, although Buckeye has an operating office at the address listed on Schedule F to which the Notice of Bankruptcy and the June 5, 2006 letter from Debtor's counsel were mailed, Buckeye did not receive those documents in the mail. Helterbrand testified that Buckeye's first notice of the Debtor's bankruptcy filing was when it was forwarded the Motion by fax from an unrelated check cashing business in Texas to which the Motion had been mailed.

Helterbrand also testified that after receiving the Motion, Buckeye's in-house legal department attempted to reach Debtor's counsel on numerous occasions without response. The in-house paralegal attempting to make contact then sent Debtor's counsel a letter on August 15, 2007, offering to return the funds in exchange for the Debtor's signature on a "General Release," which included withdrawal of the Motion. Because the Debtor refused to sign the release and Debtor's counsel refused to withdraw the Motion, Buckeye retained the funds.

On January 7, 2008, the bankruptcy court rendered its decision that Buckeye's retention of the funds after receiving notice of the Debtor's bankruptcy filing, along with the imposition of conditions upon their return, was a willful violation of the automatic stay entitling the Debtor to recover damages including attorney fees.[2] The court entered an order requiring Buckeye to return the $460 and directing the Debtor to file a motion seeking approval of attorney fees within 30 days, which, subject to any objection of Buckeye on the issues of reasonableness and appropriateness, were to be paid by Buckeye as actual damages. Finding, however, that Buckeye did not engage in "egregious, intentional conduct," the court denied the request for punitive damages.

On January 17, 2008, Buckeye filed a notice of appeal and motion for stay pending appeal. The motion for stay was granted. On February 5, 2008, as ordered, the Debtor filed a motion for approval of $1,197.50 in attorney fees. Buckeye filed a limited response to the motion for approval, stating that it did not object to the reasonableness of the amount of fees sought, subject to its right to contest the underlying basis for the award. Based on that representation, the bankruptcy court

---

[2] Other than the check proceeds, the only damages sustained by the Debtor were her attorney fees. The Debtor sought attorney fees only from the time Buckeye admitted that it had received notice of the case, upon the filing of the Motion, rendering it unnecessary for the bankruptcy court to determine if Buckeye had received notice earlier.

granted the motion and ordered the fees to be held in escrow pending appeal. Buckeye then timely filed an amended notice of appeal, also appealing the order granting the motion for approval of attorney fees.

## IV.   DISCUSSION

Upon the filing of a petition for relief, § 541(a) of the Bankruptcy Code creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Thus, the Debtor's checking account and all monies contained therein became "property of the estate" once her bankruptcy case was commenced. *In re Pyatt*, 486 F.3d 423, 427 (8th Cir. 2007); *In re Davison*, No. 07-32621, 2008 WL 471678, *4 (Bankr. E.D. Tenn. 2008); *In re Todd*, 359 B.R. 863, 864 (Bankr. N.D. Ohio 2007). Additionally, the Debtor's bankruptcy filing gave rise to an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *In re Sharon*, 234 B.R. 676, 681 (B.A.P. 6th Cir. 1999) (quoting 11 U.S.C. § 362(a)(3)). If the stay was willfully violated and the Debtor was injured by that violation, she "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). However, to the contrary, § 362(b)(11) excepts from the stay "the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument." 11 U.S.C. § 362(b)(11).

Before the bankruptcy court, the Debtor conceded that her check to Buckeye was a negotiable instrument and that pursuant to § 362(b)(11), Buckeye's presentment of the check did not violate the automatic stay. The Debtor asserted, however, and the bankruptcy court agreed, that Buckeye's *retention* of the funds after it received notice of the bankruptcy filing was a violation of the automatic stay. According to the bankruptcy court, § 362(b)(11), by its plain language, only permits a creditor to present a negotiable instrument post-petition without violating the stay. It does not otherwise "effect or authorize a transfer" of property of the estate. (Appellant's App. at 120.) Citing this BAP's decision in *Sharon* for the proposition that "withholding of possession of property of the bankruptcy estate constitutes the exercise of control over property of the estate and is a violation of the automatic stay," and quoting the Sixth Circuit Court of Appeals' holding in *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905 (6th Cir. 1993), that actions in violation of the stay "are invalid and

voidable and shall be voided absent limited equitable circumstances," the bankruptcy court concluded that "[Buckeye's] act of retaining the funds received from [the] presentment of the check, despite notice of the bankruptcy, is considered void and Buckeye is obligated to return these funds to [the Debtor], without any condition." (Appellant's App. at 121.)

The bankruptcy court rejected Buckeye's arguments that the Debtor's remedy to recover the transfer was an avoidance action under § 549 and that ruling in the Debtor's favor would render § 549 superfluous. The court reasoned that § 549 was an alternative remedy to § 362(a)(3), rather than the Debtor's sole option, and that although the two sections may overlap, "§ 549 has a separate role and vitality for Chapter 7 trustees in protecting creditors from unauthorized post-petition voluntary transfers made by a debtor of estate property," which "do not even implicate the automatic stay." (Appellant's App. at 121.) Stating that an entity in possession of property of the estate has an affirmative duty to turnover estate property after it is notified of a debtor's bankruptcy filing, the bankruptcy court rejected the argument that turnover is contingent on any predicate act, such as the filing of an avoidance action under § 549 or the execution of a release. To hold otherwise, opined the court, would not only be prohibitively expensive but would also "unjustifiably shift[] the burden of obtaining estate property to the estate." (Appellant's App. at 122.)

In this appeal, Buckeye argues that the bankruptcy court erred in concluding that the funds received by it from the presentment of the Debtor's check continued to be property of the bankruptcy estate. According to Buckeye:

> Once the funds are transferred as a result of presentment, they are no longer estate property. Applying the automatic stay to this circumstance, and permitting the debtor to recover the funds via a motion for contempt, nullifies the exception in § 362(b)(11), renders §§ 549(a) and 550 of the Bankruptcy Code superfluous and is squarely at odds with § 542(c).
>
> . . . .
>
> If a post-petition transfer effected through presentment of a check authorized by § 362(b)(11) can be automatically "voided" under the automatic stay and attorney's fees recovered from the date a payee first learns of the bankruptcy case after a motion for contempt has been (sic) already been filed, as ordered in the Decision below, then there is no point in time at which the payee can defend itself from not only having to return the funds, but from having to pay attorney fees. This is illogical, inequitable and effectively nullifies § 362(b)(11). The very fact that attorney fees are not recoverable under §§ 549 and 550 exemplifies why it is inequitable and inappropriate to apply § 362(a)(3) to this circumstance for which § 549 and 550 exist.

(Appellant's Br. at 9-10.)

A. *There Was a Post-Petition Transfer of Property of the Estate*.

We find merit in Buckeye's arguments. Undeniably, the funds in the Debtor's bank account became property of the estate protected by the automatic stay upon the Debtor's bankruptcy filing. The ruling of the bankruptcy court is premised on the conclusion that notwithstanding the payment of these funds to Buckeye when the Debtor's pre-petition check was honored, the funds paid to Buckeye remained property of the estate, because "§ 362(b)(11) did not effect or authorize a transfer of [estate property]." (Appellant's App. at 120.) While it is correct that § 362(b)(11) by itself does not effect or authorize a transfer of estate property, it is erroneous to conclude that no transfer of estate property occurred. To the contrary, when the check delivered to Buckeye by the Debtor was then honored by the Debtor's bank, the estate's interest in the funds was completely transferred. 11 U.S.C. § 101(54)(D). At that time, the funds ceased to be property of the estate. Stated differently, the estate's property interest in the bank funds was transferred to Buckeye when the Debtor's check was honored. *Barnhill v. Johnson*, 503 U.S. 393, 394-95, 112 S. Ct. 1386, 1387-88 (1992).

The Bankruptcy Code defines "transfer," *inter alia*, as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). The Supreme Court has explained that although what constitutes a transfer, and when it is complete, is a matter of federal law, because the definition of transfer provided by § 101(54)(D) includes references to "parting with property" and "interests in property" that are not defined by the Code, it is normally necessary to look to state law to determine the existence or scope of a debtor's interest in property. *Barnhill*, 503 U.S. at 397-98. *See also Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). In *Barnhill*, the Court was faced with the question of when a transfer for preference purposes occurs: when the check is delivered, or when it is honored by the drawee bank. Referring to the Uniform Commercial Code, the Court explained that a person with an account at a bank holds a claim against the bank for funds in an amount equal to the account balance. When a bank honors a check by paying it, the bank has a right to charge the debtor's account and the check payee no longer has a claim against the debtor. *Barnhill,* 503 U.S. at 400. "Honoring the check, in short, left the debtor in the position that it would have occupied if it had withdrawn cash from its account and handed it

over to [the check payee]." *Id.* Accordingly, the Court held in *Barnhill* that a transfer by check occurs on the date the drawee bank honors the check, rather than the date the check is delivered to the recipient. *Id.*

Based upon Supreme Court precedent, we conclude that the Debtor's property interest in her bank funds was disposed of, or parted with, when her bank honored her check to Buckeye. At that time, there was a transfer of property of the estate, and the funds were no longer estate property. Although not specifically addressing the nature of the funds after their transfer, various courts, including the Sixth Circuit Court of Appeals, have recognized that the post-petition honoring of a pre-petition check effects a transfer of property of the estate. *See Guinn v. Oakwood Props., Inc. (In re Oakwood Mkts, Inc.)*, 203 F.3d 406, 409 (6th Cir. 2000) (check received pre-petition but honored post-petition is a post-petition transfer of property of the estate, subject to avoidance under § 549(a)); *Clendenen v. Van Dyk Oil Co., Inc. (In re By-Rite Distrib., Inc.)*, 89 B.R. 906, 910 (D. Utah 1988) (property of estate is parted with when pre-petition check is honored post-petition; payment of checks constitutes post-petition transfer of estate property); *Franklin v. Kwik Cash of Martin (In re Franklin)*, 254 B.R. 718, 721 (Bankr. W.D. Tenn. 2000) (payment of checks presented post-petition constitutes a transfer of property of the estate); *Davis v. Am. Express Co. (In re Wilson)*, 56 B.R. 74, 76 (Bankr. E.D. Tenn. 1985) ("It is clear that property of the estate was parted with when the check was honored."); *but see In re Davison*, 2008 WL 471678, *4 (recognizing that cashing of debtor's pre-petition check post-petition constituted a post-petition transfer, but holding that check payee had affirmative duty under 11 U.S.C. § 542 to return check proceeds as property of the estate upon learning of bankruptcy filing). *See also In re Todd*, 359 B.R. 863 (Bankr. N.D. Ohio 2007) (*sin quo non* for a transfer under §101(54)(D) is disposition of property; where check issued pre-petition had not yet been honored post-petition, trustee's motion for turnover against debtor was granted because funds represented by checks remained property of the estate). Thus, regardless of whether the transfer was authorized by any section of the Bankruptcy Code, a transfer did in fact occur.

The BAP's decision in *Sharon*, relied upon by the bankruptcy court as a basis for its opinion, does not compel a different result. In *Sharon*, this Panel held that a creditor's refusal to return to a chapter 13 debtor an automobile the creditor had repossessed pre-petition was a violation of the automatic stay. *In re Sharon*, 234 B.R. at 681-82. The critical distinction between *Sharon* and the present case is that in *Sharon*, under state law, the debtor retained an interest in the repossessed

vehicle until such time as it was sold. *Id.* at 681; *see also In re Curry*, 347 B.R. 596, 602 (B.A.P. 6th Cir. 2006), *aff'd*, 509 F.3d 735 (6th Cir. 2007) (because ownership of an automobile does not transfer under Ohio law until the vehicle is sold, a repossessed vehicle remains property of the estate). Therefore, because there was merely a change in possession rather than a transfer of ownership, the repossessed automobile in *Sharon* remained property of the debtor's bankruptcy estate.

The BAP's decision in *Sharon* relied extensively on the Supreme Court's decision in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S. Ct. 2309 (1983), wherein the Court held that certain personal property of the debtor, seized pre-petition by the IRS to satisfy a tax lien, constituted property of the debtor's bankruptcy estate under § 541(a) and, accordingly, was subject to turnover under § 542 of the Bankruptcy Code. Central to the Court's decision was the observation that the seizure did not operate under applicable law to transfer ownership of the property to the IRS; ownership would be transferred only when the property was sold to a bona fide purchaser at a tax sale, and until then, the property remained the debtor's. *Id.* at 210; *see also In re Curry*, 347 B.R. at 602 n.4 (recognizing that the Supreme Court limited application of its *Whiting Pools* holding to chapter 11 cases, but observing that there is no meaningful distinction between chapter 11 and chapter 13 cases insofar as the *Whiting Pools* holding is concerned, and that numerous courts have applied the *Whiting Pools* analysis to chapter 13 cases).

Our conclusion that the honoring of the Debtor's check constituted a transfer of property of the estate such that it was no longer estate property is also compelled by other provisions of the Bankruptcy Code. Under § 542(a), an entity in possession, custody, or control of property of the estate must deliver such property or its value to the bankruptcy trustee, unless of inconsequential value. An exception to this turnover requirement is provided in subsection (c) of § 542, which provides that an entity without knowledge of a debtor's bankruptcy may in good faith transfer property of the estate or pay a debt owing to the debtor.[3] Pursuant to § 549, a trustee may avoid post-

---

[3] Section 542(c) provides that:

[A]n entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in

(continued...)

petition transfers of property of the estate that are either unauthorized or that are authorized only by § 542(c) or § 303(f), which pertains to post-petition transfers of estate property before the order for relief in involuntary cases. 5 *Collier on Bankruptcy* ¶ 549.01 (15th ed., rev. 2008). Finally, § 522(h) authorizes a debtor to exercise a trustee's § 549 avoidance powers to the extent the debtor could have exempted the property and the trustee does not attempt to avoid the transfer. If, as the bankruptcy court concluded in the instant case, no transfer of estate property takes place unless the transfer is authorized, both § 549(a) and § 522(h) would be unnecessary to avoid post-petition transfers. Rather, a transferee of estate property would be required by § 542(a) to turnover the property to the trustee because it remains estate property, or a debtor could proceed with a stay violation motion under § 362(k) to recover the property as occurred in the instant case. As recognized by the Supreme Court on numerous occasions, we are "'hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S. Ct. 974, 977 (1998) (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 837, 108 S. Ct. 2182, 2189 (1988)).

In this same vein, we must point out that to the extent a transfer is avoided under § 549, a trustee may recover for the benefit of the estate the property transferred or its value from the initial transferee or the entity for whose benefit the transfer was made. *See* 11 U.S.C. § 550(a)(1). Section 541(a)(3) includes as property of the estate any interest in property that the trustee recovers under § 550. If estate property transferred without authorization remains property of the estate, § 541(a)(3) is redundant, a conclusion we refuse to endorse.

B. *No violation of the automatic stay occurred.*

Because the funds in the Debtor's bank account were no longer property of the estate once they were transferred to Buckeye, Buckeye's retention of the funds was not a violation of the automatic stay. In this regard, we observe that the bankruptcy court's ruling was not based solely on the court's conclusion that no transfer of estate property was effected when the Debtor's check was honored. The court also concluded that § 362(b)(11) provides an exception to the automatic stay

---

³(...continued)
subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.

only for the presentment of negotiable instruments and does not otherwise authorize the payee to retain the funds once it receives notice of the bankruptcy. As stated by the bankruptcy court, "[Section 362(b)(11)] protects the process of presentment of checks, no more, no less." (Appellant's App. at 122.)

The bankruptcy court's conclusion appears to distinguish presentment of a check from its honor by the drawee bank. "Presentment" is not defined in the Bankruptcy Code. Ohio law defines "presentment" as "a demand made by or on behalf of a person entitled to enforce an instrument *to pay* the instrument made to the drawee or a party obliged to pay the instrument . . . ." Ohio Rev. Code Ann. § 1303.61 (emphasis added); *see also* U.C.C. § 3-501. It would be illogical to interpret § 362(b)(11) to mean that the holder of a check can hand the check to a bank teller but cannot take the cash the teller hands over the counter without violating the stay, or that the holder may accept the funds but must immediately return them to the drawer. Such an interpretation would render the exception essentially meaningless, because the purpose of presenting a check is to receive payment. An interpretation of this nature is also inconsistent with the legislative history of § 362(b)(11), which indicates, as recognized by the only two courts of appeals that have addressed the issue, that by the enactment of § 362 (b)(11), "Congress wanted to make clear that 'the automatic stay is not intended to interfere with the rights of a holder of a negotiable instrument to obtain payment.'" *In re Roete*, 936 F.2d 963, 966 (7th Cir. 1991) (quoting *Morgan Guar. Trust Co. of New York v. Am. Sav. & Loan Ass'n*, 804 F. 2d 1487, 1492 n.5 (9th Cir. 1986)).

It is noteworthy that the §362(b)(11) exception is not limited to persons without knowledge of the bankruptcy filing. Thus, under the plain language of the statute, a holder of a negotiable instrument may present the instrument for payment even if the holder knows that the drawer has filed for bankruptcy relief. Yet, under the Debtor's analysis, a stay violation would immediately occur upon the holder's receipt of the monies.

Moreover, this Panel is unable to distinguish the check in the instant case from any other check that a debtor may deliver for ordinary goods and services prior to his bankruptcy filing but is presented for payment post-petition by the holder.[4] Under the Debtor's analysis, upon post-petition

---

[4] It is true that a check to a payday lender is always post-dated such that negotiation of the
(continued...)

receipt of the funds from the paid check, the holder of those funds would be in violation of the automatic stay because it would be exercising control over estate property. Granted, the violation would not be willful until the holder learns of the bankruptcy filing, *see, e.g., In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001) (violation is willful if creditor deliberately carries out prohibited act with knowledge of bankruptcy case), but the violation would be ongoing nonetheless. "With over a million bankruptcies filed every year in this country, millions of checks, written prepetition, are presented post-petition. It seems to us to be bad public policy to hold that these millions of transactions violate the automatic stay in the face of a clear indication from Congress that it intended that they not." *Thomas v. Money Mart Fin. Servs., Inc. (In re Thomas)*, 317 B.R. 776, 779 (B.A.P. 8th Cir. 2004), *aff'd*, 428 F.3d 735 (8th Cir. 2005).

With the exception of the bankruptcy court herein, and one court that has followed the bankruptcy court's ruling, all courts considering the issue have agreed that the retention of funds received from an unauthorized transfer of property of the estate in the form of the post-petition cashing of a pre-petition check does not violate the automatic stay. *See Blasco v. Money Servs. Ctr. d/b/a Cash Connection (In re Blasco)*, 352 B.R. 888, 894 (Bankr. N.D. Ala. 2006) (pre-petition check negotiated, deposited and presented for payment post-petition by payday lender fell within §362(b)(11) exception and did not violate stay); *Thomas v. Money Mart Fin. Servs., Inc. (In re Thomas)*, 311 B.R. 75, 79 (Bankr. W.D. Mo. 2004) (presentment of post-dated checks was not a violation of the automatic stay; court declined "to adopt an interpretation of [§ 362(b)(11)] which would render it essentially nugatory"), *aff'd*, 428 F.3d 735 (8th Cir. 2005)*; In re Franklin*, 254 B.R. at 720 (post-petition cashing of check by payday lender falls within § 362(b)(11)'s exception to

---

[4](...continued)

check is intended for a future date, whereas checks for ordinary goods and services are generally dated the date that the check is written with the expectation that the check will be promptly negotiated after delivery. The funds advanced by the payday lender are a loan, and the post-dated check is a type of promissory note: when the debtor gets paid, the "promissory note" will be presented for payment. For purposes of § 362(b)(11), however, the distinction between post-dated checks and current checks presented in payment of goods and services is a distinction without a difference. The purpose of § 362(b)(11) is to encourage the free flow of commerce by permitting parties to present and honor negotiable instruments without having to worry about a potential violation of the automatic stay. This purpose is thwarted if the party honoring the check is required to distinguish between checks written concurrently with payment of goods and services and checks post-dated in repayment of loans.

automatic stay); *In re Figueira*, 163 B.R. 192, 195 (Bankr. D. Kan. 1993) (*dictum* that creditors who cashed pre-petition checks from debtor post-petition did not violate the automatic stay due to § 362(b)(11) exception); *but see In re Davison*, 2008 WL 471678, *4 (recognizing that creditor in possession of funds received from the post-petition cashing of the debtor's pre-petition check was in violation of the automatic stay, but no willful violation where creditor returned funds to debtor immediately upon learning of bankruptcy filing). We believe that the view expressed by the majority is well reasoned.

C. *The unauthorized transfer to Buckeye is subject to avoidance under § 549(a)*.

Our conclusion that Buckeye did not violate the automatic stay does not mean that it was nonetheless free to retain the monies paid it. "Section 362(b)(11) does not authorize any transfer of estate property, it merely permits the presenter's performance of an act that would otherwise be a stay violation." *In re Thomas*, 311 B.R. at 79. As previously noted, the transfer that occurred when the bank honored the check presented by Buckeye was authorized under § 542(c). However, § 542(c) only protects the drawee bank who in good faith honored the check and paid with funds from the Debtor's account; it does not protect the transferee, i.e., the payee on the check. *In re Franklin*, 254 B.R. at 721-22 (citing *Wittman v. State Farm Life Ins. Co., Inc. (In re Mills)*, 167 B.R. 663, 664 (Bankr. D. Kan. 1994)); 5 *Collier on Bankruptcy* ¶ 549.03[3]. Again, § 549(a) permits the Trustee to avoid a post-petition transfer that is authorized only under § 542(c). "Section 549(a)(2)(A) restricts the impact of section 542(c) to protecting the transferor (agent, bailee, bank, *inter alia*) by enabling the trustee to avoid the postpetition transfer and recover the property transferred from the transferee under section 550." *Wittman v. State Farm Life Ins. Co. (In re Mills)*, 176 B.R. 924, 928-29 (D. Kan. 1994) (quoting 4 *Collier on Bankruptcy* ¶ 549.03 (15th ed. 1990)).

Various courts have recognized that the appropriate vehicle to recover post-petition transfers is via a § 549(a) avoidance action. *See, e.g.,In re Franklin*, 254 B.R. at 721-22 (while post-petition presentment of pre-petition check by payday lender was not stay violation, court allowed chapter 13 debtor to bring § 549 avoidance action because trustee had not attempted to avoid the transfer in the five months since the bankruptcy case was filed); *Rathbone v. Lake (In re Consol. Partners Inv. Co.)*, 156 B.R. 982, 984-85 (Bankr. N.D. Ohio 1993) (voluntary post-petition transfers of estate property by the debtor do not violate the automatic stay and § 549 is the exclusive means of avoidance). In *Blasco*, the court was faced with the precise question before this Panel, whether a payday lender

violated the automatic stay when it cashed post-petition the chapter 13 debtor's pre-petition check. *In re Blasco*, 352 B.R. at 891. Finding no stay violation because of the § 362(b)(11) exception, the court observed that the payday loan industry was well-established when Congress enacted BAPCPA, yet no amendment was made to restrict the post-petition presentment of debtor's checks by payday lenders. *Id*. at 894-95.

> To the extent the subject was even on the mind of Congress at the time it was considering BAPCPA, perhaps it believed that the avoidance powers in Section 549 of the Bankruptcy Code are a sufficient remedy to protect the estate from such transfers. In any event, there is an overriding consideration that must be kept in mind: the efficiency of commerce and the banking system. If every party to whom a check is negotiated must determine if there are unknown conditions attached to payment of the check, the system would quickly fail. . . . Nonetheless, while the Court believes debtor transactions with payday loan companies were not necessarily on the mind of Congress when it originally enacted Section 362[(b)(11)], the plain meaning of the law is clear. There is no need for a court to inquire beyond the plain language of a statute when the language is coherent and consistent.

*Id.* at 895.

Notwithstanding our conclusion that the funds retained by Buckeye may be recovered as a post-petition transfer, this Panel cannot conjure up any scenario where the unauthorized post-petition transfer of funds out of a debtor's bank account as a result of the post-petition honoring of a pre-petition check is not an avoidable transfer under § 549(a). Continued retention of the funds after notice of the bankruptcy in the hopes that no avoidance action will be filed, while not a violation of the automatic stay, is a practice which must be discouraged.[5] Such retention allows a pre-petition creditor to obtain full payment on a pre-petition general unsecured debt to the potential detriment of the estate, the debtor, and other creditors. This is particularly troublesome when the creditor's claim includes interest calculated at a very high annual percentage rate (in the case *sub judice*, the rate of interest was 391.07%). *See, e.g. Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 486 (6th Cir. 2001) (interest rate of 500%).

---

[5] Because of the small amount to be recovered, it is unlikely that a chapter 7 or chapter 13 trustee will file an adversary proceeding to recover the funds. Even if a debtor does have standing to bring the avoidance action, *see infra* note 6, the costs of the adversary proceeding may well deter the debtor from bringing such an action. Since an unauthorized post-petition transfer of funds out of a debtor's bank account due to the post-petition honoring of a pre-petition check is always an avoidable transfer under § 549(a), the creditor is well-advised to voluntarily return the funds.

In the present case, the Debtor did not seek avoidance under § 549, either directly,[6] or via § 522(h) of the Bankruptcy Code. She sought only damages for Buckeye's alleged violation of the automatic stay pursuant to § 362(k). As a general rule, avoidance actions are adversary proceedings commenced by the filing of a complaint and attorney fees are not recoverable. *See Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 95 S. Ct. 1612 (1975) (attorney fees not recoverable absent specific statutory authority).[7] On the other hand, actions to recover damages for stay violations are generally brought by motion, with attorney fees expressly allowable under § 362(k). *See In re Sharon*, 234 B.R. at 687.

Even though no avoidance action has been commenced, Buckeye confirmed on the record at oral argument that it is prepared to promptly return the transferred funds to the Debtor, as it has appropriately agreed to do throughout the case. The primary point of contention in this case was not whether the funds should be returned, but whether a violation of the stay had taken place such that attorney fees were recoverable. Having concluded that no stay violation occurred, but that nonetheless the unauthorized transfer is subject to avoidance under § 549(a), we will remand this case so that the funds held in escrow for payment of the Debtor's attorney fees can be released to Buckeye, and Buckeye can return the transferred funds in the amount of $460 to the Debtor.

## V. CONCLUSION

For the foregoing reasons, we reverse the order of the bankruptcy court finding that Buckeye willfully violated the automatic stay and remand the case for release to Buckeye of the attorney fees held in escrow.

---

[6] Courts are split on whether a chapter 13 debtor has standing in the first instance to bring an avoidance action under § 549(a), and there is no controlling Sixth Circuit decision on the issue. *See Hearn v. Bank of New York (In re Hearn)*, 337 B.R. 603, 608-09 (Bankr. E.D. Mich. 2006) (acknowledging cases on both sides of issue, but not having to reach the issue); *see also Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292, 298 (5th Cir. 1997) (finding chapter 13 debtors have standing to avoid transfers, subject to restrictions set forth in §§ 522(g)(1) and (h)); *LaBarge v. Benda (In re Merrifield)*, 214 B.R. 362 (B.A.P. 8th Cir. 1997) (same); *Wiget v. Nielsen (In re Nielsen)*, 197 B.R. 665 (B.A.P. 9th Cir. 1996) (same); *Kildow v. EMC Mortgage Corp. (In re Kildow)*, 232 B.R. 686 (Bankr. S.D. Ohio 1999) (same); *In re Redditt*, 146 B.R. 693, 696 (Bankr. S.D. Miss. 1992) (determining that only trustees or debtors-in-possession have avoidance powers of § 549(a)).

[7] Unlike § 362, §§ 549 and 550 contain no statutory authority to award attorney fees.

JAMES D. GREGG, Bankruptcy Appellate Panel Judge, concurring. I fully agree with the Panel's decision that a so-called "payday lender" creditor who retains funds from a postdated check which is presented and honored postpetition does not violate the automatic stay because of the limited exception in § 362(b)(11). I also agree that the transfer to Buckeye, the appellant payday lender,[8] is avoidable under § 549(a) and recoverable under § 550(a). I write separately to further address the issue of "who gets the money" from the recovery.

Bankruptcy court decisions in this circuit have long held that a chapter 13 debtor lacks standing to pursue avoidance and recovery of transfers; only the trustee normally possesses the requisite standing. *Hill v. Fidelity Fin. Servs. (In re Hill)*, 152 B.R. 204 (Bankr. S.D. Ohio 1993); *Mast v. Borgess Med. Ctr. (In re Mast)*, 79 B.R. 981 (Bankr. W.D. Mich. 1987). However, it is properly recognized that, under certain circumstances, the Bankruptcy Code permits a debtor to avoid transfers under § 522(g)(1) and (h). *In re Hill*, 152 B.R. at 207; *In re Mast*, 79 B.R. at 982 n.4. Although some courts have permitted a chapter 13 debtor standing to exercise a trustee's general avoidance powers, such standing is based upon practicalities and policy considerations. *See* Dianne K. Rudman, *What Power Does and Should the Chapter 13 Debtor Have to Avoid Liens & Transfers?*, 37 Gonz. L. Rev. 513 (2001/2002). "The general rule stems from a strict reading of the Code: the Chapter 13 debtor lacks a statutory grant of authority to exercise the Chapter 5 avoidance powers." *Id*. at 523. It is noted, however, that "a considerable number of decisions have granted full use of the trustee avoidance powers to the Chapter 13 debtor without articulating the basis for doing so." *Id*. at 526.

The Ninth Circuit Court of Appeals has listed the necessary elements for a debtor to avoid a transfer under § 522(h). *DeMarah v. United States (In re DeMarah)*, 62 F.3d 1248, 1250 (9th Cir. 1995). A chapter 13 debtor may exercise the general avoidance power if: (1) the transfer was involuntary; (2) the debtor did not conceal the property; (3) the trustee did not seek avoidance; (4) the

---

[8] "The $85 billion payday industry provides short-term loans, usually secured with a check postdated to the borrower's next payday, with an interest rate that works out to an average of $15 per $100 borrowed on a two-week loan." Easha Anand, *Payday Lenders Back Measures to Unwind State Restrictions*, Wall St. J., Oct. 28, 2008, at A6. In Ohio and Arizona, "payday-lending branches outnumber Starbucks and McDonald's outlets combined." *Id*. Currently, payday lending is legally barred in fifteen states. *Id*.

debtor requests avoidance under § 522(h); and (5) the transferred property could have been exempted by the debtor if the trustee had avoided the transfer. *Id*.

A key question in this appeal is whether the transfer was involuntarily made by the Debtor. Before the filing, the Debtor gave a $460 postdated check to Buckeye. One can easily see that the *delivery* of the check was voluntary. However, Buckeye presented the check on April 23, 2006. As explained in the Panel's opinion, the transfer took place as a result of Buckeye's presentment and the bank's honor of the check. *Barnhill v. Johnson*, 503 U.S. 393, 400, 112 S. Ct. 1386, 1390 (1992) (transfer occurs on date check is honored). Although it might seem counterintuitive, as a matter of law, this is a creditor-initiated involuntary transfer under § 101(54)(D).[9]

The record on appeal shows no evidence whatsoever that the Debtor concealed the property or that the chapter 13 trustee sought to avoid the transfer. Also, although the Debtor did not explicitly rely upon § 522(h) to seek avoidance, the Debtor sought to avoid and recover the transfer.

The final element to be demonstrated is the most problematic. The Debtor must show that the property is exempt, or could have been exempted. In this appeal, the record is silent. However, Buckeye has constantly stated, including at the oral argument before this Panel, that it is willing to return the funds (but *not* pay attorney's fees) to the Debtor. Settlements in bankruptcy cases are favored by law. *In re Cormier*, 382 B.R. 377, 400-01 (Bankr. W.D. Mich. 2008). Given Buckeye's offer to return the funds and the Debtor's desire to obtain them, this judge believes this is tantamount to a reasonable settlement. Circling back to the initial question posed, the answer is "the Debtor gets the money."[10] I join in the Panel's opinion and separately concur as well.

_____

[9] This analysis is similar to that utilized when a debtor voluntarily delivers a mortgage prepetition and the mortgagee forecloses its interest, thereby obtaining title, postpetition. Although the debtor voluntarily gave the mortgage interest, the act of foreclosure is creditor-initiated and therefore must be categorized as an involuntary transfer.

[10] This will not necessarily be the result in all cases like this one. To obtain the funds, a debtor must allege and be prepared to prove all elements under § 522(h). If a payday lender receives notification of a bankruptcy filing, and a demand to return the postpetition transfer, it would be wise to comply. If uncertain as to whom is entitled to the funds, it may return the funds to the trustee with instructions that they should be paid to the debtor or the estate, depending upon whether the funds are exemptible. The debtor and the trustee may settle the matter of "who gets the money;" if they are unable to do so, the bankruptcy court will decide.