ELECTRONIC CITATION:  2008 FED App. 0002P (6th Cir.)
File Name:  08b0002p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:   EDWIN D. BAILEY and<br>JAMIE S. BAILEY,<br><br>Debtors.<br>_____<br><br>EDWIN D. BAILEY and JAMIE S. BAILEY,<br><br>Appellants,<br><br>v.<br><br>ANDREW W. SUHAR, CHAPTER 7 TRUSTEE,<br><br>Appellee.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 07-8016 |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division at Youngstown.
No. 05-41609.

Submitted: November 14, 2007

Decided and Filed: January 18, 2008

Before: GREGG, PARSONS, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ON BRIEF:**  Edwin D. Bailey, Jamie S. Bailey, Niles, Ohio, pro se.

---

**OPINION**

---

JAMES D. GREGG, Bankruptcy Appellate Panel Judge. Edwin and Jamie Bailey ("Debtors") appeal a bankruptcy court order directing them to turn over a $3,342 federal income tax refund to the chapter 7 trustee. For the reasons that follow, the bankruptcy court's order is AFFIRMED.

## I. ISSUE ON APPEAL

The issue on appeal is whether the bankruptcy court erred when it ordered the Debtors to turn over their prepetition federal income tax refund to the chapter 7 trustee.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP, and a final order of the bankruptcy court may be appealed by right under 28 U.S.C. §158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494 (1989) (citations omitted). The bankruptcy court's order granting the trustee's motion for turnover is a final order. *See Professional Ins. Mgmt. v. Ohio Casualty Group of Ins. Cos. (In re Professional Ins. Mgmt.)*, 285 F.3d 268, 281 (3d Cir. 2002) ("Following the lead of every circuit court that has considered the question directly or indirectly, we hold that a bankruptcy court's turnover order . . . is a final order and hence appealable as of right.").

"The bankruptcy court's findings of fact are reviewed for clear error, and questions of law are reviewed *de novo*." *Dery v. Cumberland Casualty & Surety Co. (In re 5900 Assocs., Inc.)*, 468 F.3d 326, 329 (6th Cir. 2006) (citation omitted). A factual determination is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bailey v. Bailey (In re Bailey)*, 254 B.R. 901, 903 (B.A.P. 6th Cir. 2000) (citations omitted). "De novo review means that the appellate

court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).

### III.  FACTS

The Debtors filed their voluntary joint chapter 7 petition on March 28, 2005.  Andrew W. Suhar ("Trustee") was appointed as the chapter 7 trustee.  On May 24, 2005, the § 341 meeting ("first meeting") was held.  11 U.S.C. § 341.[1]  As of the date of the first meeting, the Debtors had not yet filed their 2004 federal and state tax returns.  The Trustee advised the Debtors that any tax refunds to which they were entitled were to be turned over to the Trustee upon their receipt.   The Debtors signed an acknowledgment that they were instructed to do so.

The Debtors filed their 2004 tax returns on July 15, 2005.  Subsequently, they received a $620 state income tax refund and a $3,429.93 federal income tax refund.  The Debtors allege that their bankruptcy attorney at the time, James H. Beck, Esq. ("Attorney Beck"), advised them that $1,600 of the federal refund could be exempted under applicable law.  The Debtors then remitted a check to Attorney Beck for the balance of the federal refund in the amount of $1,829.93.  They believed that Attorney Beck would forward these funds to the Trustee.  For reasons not explained in the record, this did not occur.  In fact, in December 2005, Attorney Beck refunded a portion of these funds, $717.93, to the Debtors.  The Debtors allege that Attorney Beck retained at least $717 of the balance of the funds in satisfaction of outstanding attorney's fees.[2]  The Debtors also assert that they gave copies of all documentation requested by the Trustee, including their bank statements and tax returns, to Attorney Beck.  According to the Debtors, Attorney Beck failed to forward these documents to the Trustee.

On May 2, 2006, the Trustee filed a motion for turnover (the "Motion") of the Debtors' bank statements, their 2004 tax returns, and the non-exempt portion of their federal and state tax refunds.

---

[1] This bankruptcy case predates the  Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), which generally became effective on October 17, 2005.  Unless stated to the contrary, all future statutory references are to the pre-BAPCPA Bankruptcy Code, 11 U.S.C. § 101-1330, e.g., "§ ___."

[2] Although the Debtors produced a copy of a check showing that they paid Attorney Beck $1,829.93 on October 3, 2005, a "Trust Disbursement Statement" prepared by Attorney Beck shows that only $1,434.93 was being held in Attorney Beck's trust account as of December 22, 2005.

Attorney Beck filed a response to the Motion on the Debtors' behalf, then moved to withdraw as counsel three days later. The Debtors also filed a separate response to the Motion.

A hearing on the Motion was held before the bankruptcy court on June 1, 2006. The Debtors appeared at the hearing *pro se.* At the hearing, the Debtors agreed to provide copies of their bank statements and tax returns to the Trustee. In addition, the Debtors agreed to turn over their $620 state tax refund. Accordingly, the bankruptcy court partially granted the Trustee's Motion on those issues. Based on the Debtors' allegations about Attorney Beck's handling of the federal tax refund and uncertainty about the Debtors' ability to exempt a portion of those funds, the court declined to determine the amount of the federal income tax refund that was required to be turned over to the Trustee. Because the Debtors had claimed an exemption in the funds in their bank account, the court directed the Trustee to review the Debtors' bank statements to determine what portion of available exemptions had been claimed by the Debtors, and consequently, what exemptions might remain to apply to the tax refund. After reviewing this information, the Trustee was instructed to inform the Debtors of the amount required to be turned over to the bankruptcy estate. The court further stated that, to the extent there remained a dispute between the Debtors and Attorney Beck as to the federal refund, a separate motion would have to be brought before the court. An order granting the Motion and ordering turnover of the Debtors' tax returns, bank statements, and the nonexempt portions of the Debtors' 2004 federal and state tax refunds was entered by the court on March 14, 2007.

The Debtors moved for reconsideration of the turnover order, and the court subsequently issued its Amended Order for Turnover and Resolving Debtors' Motion for Reconsideration ("Amended Order") on March 29, 2007. The Amended Order stated that the bank statements provided to the Trustee showed that the Debtors had $1,564.06 in their bank account as of the bankruptcy filing date. Based upon this information, the court determined that there was no remaining exemption available to apply to the federal tax refund. Accordingly, the court ordered the Debtors to turn over the entire federal refund in the amount of $3,342[3] to the Trustee within ten days. This timely appeal followed.

---

[3] As noted previously, the total amount of the Debtors' 2004 federal income tax refund was $3,429.93. Of this amount, $87.93 was interest paid to the Debtors by the United States Internal Revenue Service. (J.A. at 28.) The Trustee sought, and the bankruptcy court ordered, notwithstanding § 541(a)(6), turnover of only the principal amount of the refund, $3,342.

## IV.   DISCUSSION

The Trustee's turnover motion was filed under § 542 of the Bankruptcy Code, which states:

> [A]n entity, other than a custodian, in possession, custody, or control, *during the case*, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property *or the value of such property*, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a) (emphasis supplied).  To prevail in a turnover action under § 542, the party seeking turnover must establish (1) that the property is or was in the possession, custody or control of an entity during the pendency of the case, (2) that the property may be used by the trustee in accordance with § 363 or exempted by the debtor under § 522; and (3) that the property has more than inconsequential value or benefit to the estate.  *See Alofs Mfg. Co. v. Toyota Mfg., Ky., Inc. (In re Alofs Mfg. Co.)*, 209 B.R. 83, 91 (Bankr. W.D. Mich. 1997) (citing *McClatchey v. Ohio Public Employees Deferred Compensation Program (In re Matheney)*, 138 B.R. 541, 548 (Bankr. S.D. Ohio 1992)); *see also Kerney v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457, 475 (Bankr. E.D. Tenn. 2002) (to be recoverable under § 542(a), property must be "exemptible by the debtor or usable, sellable, or leasable by the trustee under § 363").  The chapter 7 trustee, as the party seeking turnover, bears the burden of proving each element by a preponderance of the evidence.  *United States v. Chalmers (In re Wheeler)*, 252 B.R. 420, 425 (W.D. Mich. 2000) (citing *In re Alofs Mfg. Co.*, 209 B.R. at 89-91).

The Debtors do not dispute that the federal income tax refund is property of their bankruptcy estate that may be used, sold or leased by the chapter 7 trustee.  Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *see United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203, 103 S. Ct. 2309, 2312 (1983).  This broad definition unquestionably includes income tax refunds based upon a debtor's prepetition earnings or losses.  *See Kokoszka v. Belford*, 417 U.S. 642, 648, 94 S. Ct. 2431, 2435 (1974); *Araj v. Kohut (In re Araj)*, 371 B.R. 240, 243-44 (E.D. Mich. 2007) (noting that "every court that has considered this issue has held that the portion of an income tax refund that is based upon the pre-petition portion of a taxable year constitutes property of the bankruptcy estate") (citations

omitted). In this instance, the entire refund accrued before the filing of the bankruptcy case. It is also undisputed that the federal tax refund has value for the estate.

The Debtors argue, however, that Attorney Beck advised them that $1,600 of their refund could be exempted, and that he should be held responsible for this erroneous advice. They further argue that the balance of their refund, $1,829.93, was paid to Attorney Beck, and that they no longer have the funds to pay to the Trustee. The first portion of the Debtors' argument, seeking relief against their attorney for his assertedly erroneous advice, cannot be addressed in the context of this appeal. The exemptions available to the Debtors are established by Ohio law, and were properly utilized by the bankruptcy court in deciding the turnover motion.[4] As the bankruptcy court correctly noted, to the extent the Debtors seek to hold Attorney Beck "responsible" for his alleged failure to properly advise them about their available exemptions, they are required to file a separate action against Attorney Beck. *See, e.g.*, 11 U.S.C. § 329. In this appeal, the Debtors are unable to mount a defense to the Motion based solely upon their attorney's alleged acts or omissions. *See generally Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1390 (1962) (a litigant is generally bound by the acts and omissions of his attorney); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397, 113 S. Ct. 1489, 1499 (1993) (clients are "held accountable for the acts and omissions of their chosen counsel").

The second portion of the Debtors' argument is that they lack the ability to turn over the balance of the refund because the $1,829.93 was paid to Attorney Beck and is no longer in their possession or control. At the hearing on the Trustee's turnover motion, however, the Debtors conceded that Attorney Beck refunded $717.93 to them in December 2005 and assertedly retained at least $717 of the balance in satisfaction of his attorney's fees.[5] Therefore, the only portion of the federal tax refund arguably not in the Debtors' possession or control at the time of the turnover proceeding is the approximately $717 that may have been retained by Attorney Beck.

---

[4] Ohio law allows each Debtor a $400 cash and $400 wild card exemption. *See* Ohio Revised Code §§ 2329.66(A)(4)(a) and (A)(18). The bankruptcy court applied these exemptions to the funds that were in the Debtors' bank account at the time their case was filed, thereby leaving no remaining amount to be used to exempt the tax refunds.

[5] If the Debtors seek relief against Attorney Beck in the bankruptcy court, one inquiry might be whether he made a proper disclosure of any fees received postpetition. *See* Fed. R. Bankr. P. 2016.

Courts are divided on the question of whether trustees may compel turnover from entities who do not have possession of the property at the time turnover is sought. Prior to the enactment of the Bankruptcy Code, turnover procedures were not expressly prescribed by statute and were considered "judicial innovation[s]" routinely used by the bankruptcy courts to "efficiently and expeditiously" administer the cases pending before them. *Maggio v. Zeitz (In re Luma Camera Serv., Inc.)*, 333 U.S. 56, 61, 68 S. Ct. 401, 404 (1948). Analyzing these procedures, the Supreme Court held that turnover was appropriate only "when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof, by the defendant at the time of the [turnover] proceeding." *Id*. at 63-64. Some courts have continued to follow this old Act precedent after the enactment of the Bankruptcy Code, holding that turnover is permissible only when the defendant or respondent has possession or control of the property at the time the motion for turnover is filed.[6] *See*, *e.g.*, *Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423, 429 (8th Cir. 2007) (although the debtor had approximately $1,900 in his bank account at the time his petition was filed, he could not be compelled to turn over that amount when a majority of the funds were used to honor prepetition checks that cleared soon after his bankruptcy filing; the court held that the debtor "would have had the duty to turn over all the money in his checking account before his checks were honored," but the trustee could not "compel him to turn over property which is no longer within his control").

Other courts have held that the enactment of the Bankruptcy Code altered the pre-Code possession requirements. Under the current Bankruptcy Code, turnover proceedings are no longer "judicial innovations," but are codified in § 542. Section 542(a) modifies prior judicial opinions to the extent that it expressly permits a trustee to recover "the value" of the property, in addition to the

---

[6] In an unpublished decision issued after the enactment of the Bankruptcy Code, the Sixth Circuit Court of Appeals has suggested, at least in passing, that possession or control of property continues to be a prerequisite to turnover liability. *See Camall Co. v. Steadfast Ins. Co. (In re Camall Co.)*, 16 F. App'x 403, 406 (6th Cir. 2001) ("It is well established that turnover [under § 542] is appropriate when (1) the money or property directed to be turned over is a part of the bankruptcy estate, and (2) *the bankrupt or person ordered to turn over the property has it in his possession or under his control at the time of the order*.") (emphasis supplied). In support of this statement, the Sixth Circuit cited an old Bankruptcy Act case. *Coleman v. Murdock (In re Welded Const., Inc.)*, 339 F.2d 593, 594 (6th Cir. 1964). We note that *Camall* involved unique factual circumstances because the funds sought in the turnover action were already subject to a interpleader action and had not yet been determined to be property of the debtor's bankruptcy estate. The *Camall* court deemed the property of the estate issue to be more important than the issue of the debtor's control of the funds.

property itself, from one who possessed the property "during the case." *See* 11 U.S.C. § 542(a). Recognizing this statutory language, several courts have held that present possession is no longer a prerequisite to turnover liability. *See, e.g.*, *Beaman v. Vandeventer Black, LLP (In re Shearin)*, 224 F.3d 353 (4th Cir. 2000) (law firm, having possessed year-end profits belonging to the debtor during the pendency of his bankruptcy case, must turn over profits, or their equivalent value, to the trustee, notwithstanding that the law firm no longer possessed the funds at the time the turnover proceeding was filed);[7] *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Prods., Inc.)*, 100 F.3d 53, 56 (7th Cir. 1996) ("[B]y the time the trustee got around to demanding the money from the law firm , the law firm no longer had it, so how could it deliver it to the trustee? [Section 542], however, requires the delivery of the property or the value of the property. Otherwise, upon receiving a demand from the trustee, the possessor of property of the debtor could thwart the demand simply by transferring the property to someone else. *That is not what the statute says . . . and can't be what it means*.") (emphasis added).

The fact that approximately $717 of the Debtors' federal tax refund may have been retained by Attorney Beck in satisfaction of outstanding attorney's fees, and thus was not in the Debtors' possession at the time of the turnover action, does not defeat the Trustee's right to recover the full amount of the tax refund from the Debtors. The Debtors do not dispute that the refund is property of their bankruptcy estate and that they had possession of the full refund during the pendency of their bankruptcy case. Although one may be sympathetic to the Debtors' plight, the law provides the Debtors no valid defense to the Trustee's Motion.

---

[7] In a previous decision, the Fourth Circuit Court of Appeals had suggested that present possession of property or its proceeds was a prerequisite for turnover. *See Hager v. Gibson*, 109 F.3d 201 (4th Cir. 1997) (citing *Maggio*, 333 U.S. 56). In *Hager*, a shareholder of the debtor corporation drew $40,000 from the corporation's bank account to pay down a corporate promissory note before personally purchasing the note for its remaining balance. The corporation later filed for bankruptcy relief. Analyzing the transaction under the turnover provisions of § 542(a), the *Hager* court held that the shareholder had *never* possessed either the $40,000 or any proceeds therefrom and therefore could not be ordered to turn over the funds under § 542. Because the holding in *Hager* was that the shareholder had not possessed the funds at any time, the *Shearin* court explained that reliance on *Hager* for the broad proposition that an entity must possess the property or its proceeds at the time turnover is sought would be "entirely misplaced." *In re Shearin*, 224 F.3d at 357.

## V. CONCLUSION

For the reasons stated, the bankruptcy court's turnover order is AFFIRMED.