RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17b0001p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

_____

In re: SHERYL BRUNER,

*Debtor.*

_____

PHAEDRA SPRADLIN,

*Plaintiff-Appellant,*

*v.*

MICHAEL JOHN KHOURI; KHOURI LAW FIRM,

*Defendants-Appellees.*

No. 15-8031

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky at Lexington.
No. 13-51267—Tracey N. Wise, Judge.

Argued: May 26, 2016

Decided and Filed: January 4, 2017

Before: DELK, HUMPHREY, and OPPERMAN, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

_____

**ARGUED:** Richard Boydston, BINGHAM GREENEBAUM DOLL LLP, Cincinnati, Ohio, for Appellant. Yelena Bakman, KOURI LAW FIRM, Irvine, California, for Appellees. **ON BRIEF:** Richard Boydston, BINGHAM GREENEBAUM DOLL LLP, Cincinnati, Ohio, for Appellant. Yelena Bakman, KOURI LAW FIRM, Irvine, California, for Appellees.

_____

**OPINION**

_____

GUY R. HUMPHREY, Bankruptcy Appellate Panel Judge. In this appeal, Phaedra Spradlin, Chapter 7 Trustee, appeals the bankruptcy court's order and decision denying the

Trustee's request for turnover of funds paid to the debtor's criminal attorney and his firm post-petition from a joint bank account that the debtor shared with her mother. The bankruptcy court held that, assuming the funds belonged to the debtor, once the funds were transferred to the attorney, they no longer belonged to the debtor, and turnover was not an appropriate remedy since the fees were no longer property of the estate. For the reasons stated in this opinion, the Panel affirms the bankruptcy court's decision and order.

## ISSUES ON APPEAL

1. Whether the bankruptcy court erred in its determination that the Trustee did not meet her burden in proving that the Attorney Fee paid to the Defendants was property of the chapter 7 bankruptcy estate, and thus subject to turnover under § 542 of the Bankruptcy Code.

2. Whether the bankruptcy court was required to consider whether the payment to the Defendants could be avoided under § 549 of the Bankruptcy Code.

3. Whether the bankruptcy court abused its discretion by finding that previous testimony proffered into evidence by the Trustee was inadmissible hearsay.

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("Panel") has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the Panel, and no party has timely filed to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right. 28 U.S.C. § 158(a)(1). For the purpose of an appeal, a final order is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation omitted).

Whether property is part of the bankruptcy estate is a question of law. *Kitchen v. Boyd* (*In re Newpower*), 233 F.3d 922, 927 (6th Cir. 2000). The bankruptcy court's legal conclusions are reviewed de novo. *Corzin v. Fordu (In re Fordu),* 209 B.R. 854, 857 (B.A.P. 6th Cir. 1997). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders*

*(In re Morgeson),* 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted). Essentially, the reviewing court decides the issue "as if it had not been heard before." *Mktg. & Creative Solutions, Inc. v. Scripps Howard Broad. Co. (In re Mktg. & Creative Solutions, Inc.),* 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006) (citation omitted). "No deference is given to the trial court's conclusions of law." *Id.* (citation omitted).

## FACTS

On May 16, 2013 Sheryl A. Bruner ("Debtor") filed a chapter 13 bankruptcy petition. Debtor's schedules indicated she had $1,500 in a checking account and no cash on hand. On December 5, 2013 the Kentucky Attorney General's Medicare Fraud Unit executed a search warrant of the Debtor's home. The search resulted in the seizure of $270,000 in cash stored in an unlocked safe. As a result of the discovery of the concealed cash, the Chapter 13 trustee moved to convert the case to chapter 7. The court granted that motion on December 27, 2013 and Phaedra Spradlin ("Trustee") was appointed as the Chapter 7 trustee.

On January 9, 2014 the Debtor was indicted for fraudulently claiming Social Security benefits, bankruptcy fraud, and money laundering. On January 16, 2014 the Debtor's mother, Mary Jane Newton ("Newton"), deposited $51,000 in cash into a joint bank account she held with the Debtor. Immediately after depositing the money, Newton transferred $50,000 to the Appellee Khouri Law Firm to retain the firm as the Debtor's criminal counsel. ("Attorney Fee") (Khouri and his law firm shall be referred to as "Defendants"). The Defendants represented the Debtor in her criminal trial in which she was convicted of all counts in March of 2014. Her conviction was affirmed by the United States Court of Appeals for the Sixth Circuit on July 30, 2015.

On February 11, 2014 the Trustee filed a bare bones complaint, initiating an adversary proceeding to pursue the Attorney Fee. Complaint by Trustee for Turnover, ECF No. 1.[1] ("Complaint"). The Complaint alleged that the Attorney Fee was property of the chapter 7 estate and that the Trustee was entitled to take possession of the fee pursuant to, inter alia, § 541 of the

---

[1]The record in this appeal is found in the electronic docket of Spradlin v. Khouri (In re Bruner), Adv. No. 14-05009 (Bankr. E.D. Ky.). Citations to the electronic docket will identify the document by name, date, and the ECF number for the docket entry.

Bankruptcy Code. Other than the title to the Complaint being "Complaint By Trustee For Turnover," the three-page complaint did not mention that the Trustee was pursuing the Attorney Fee under § 542, nor the theory under which the funds transferred to the Defendants remained property of the estate. The Defendants answered the Trustee's Complaint by denying all substantive allegations and asserting 21 affirmative defenses.

Before answering the Complaint, the Defendants moved for summary judgment.[2] Specifically, the Defendants argued that "'The Trustee has failed to tie the $50,000 retainer in any way, shape, or form to the bankruptcy estate.'" Order Denying Motion for Summary Judgment, Jan. 30, 2015, ECF No. 75 (quoting the Defendants' Motion for Summary Judgment). The bankruptcy court found that:

> It is undisputed that the immediate source of Defendants' retainer to represent the Debtor in her pending criminal action was a $50,000 wire transfer from the Debtor's mother, Mary Jane Newton, which in turn came from a cash deposit made into a joint account of the Debtor and Ms. Newton the day before the transfer.

*Id.* at 1, 2. The bankruptcy court went on to find that: the Trustee had presented evidence to the effect that the Debtor and her mother, Newton, lived together; that all of Newton's cash was seized by police a month before the wire transfer; and that following the seizure of cash from the Debtor and Newton's home, the Debtor withdrew over $130,000 of cash from various bank accounts. *Id.* at 2. Based upon these findings, the bankruptcy court determined that there was a "genuine issue of material fact as to whether the Debtor's funds were the source of the cash deposit made by Newton and subsequent wire transfer" and denied the Defendants' Motion for Summary Judgment. *Id.*

On February 4, 2015 the bankruptcy court entered the Second Amended Order for Trial, setting the trial date as well as deadlines for trial briefs and stipulations. ECF No. 78. The parties submitted their first Joint Stipulation of Fact on March 17, 2015, stipulating that:

> 1. Plaintiff is the Chapter 7 trustee in the chapter 7 case of Sheryl Ann Bruner (the "Debtor").

---

[2]Only the Order Denying Motion for Summary Judgment is included in the record. References made to the motion and responses to the motion for summary judgment are from the Order Denying Motion for Summary Judgment.

2. Defendant Michael J. Khouri is the counsel for the Debtor as defendant in Criminal Action No. 5:14-CR-5-KKC in the United States District Court for the district styled United States of American, plaintiff v. Sheryl Bruner, defendant (the "Criminal Case").

3. The federal criminal proceeding was commenced with an indictment on January 9, 2014, two weeks after the Debtor's bankruptcy case was converted from Chapter 13 to Chapter 7. The Debtor was arrested on January 10, 2014. After a federal court detention hearing held January 15 and 16, 2014 the Debtor was incarcerated and has remained continuously in federal custody since then.

4. Debtor was found guilty in the Criminal Case on March 13, 2014. Judgment was entered and sentencing was imposed on August 7, 2014.

5. The Debtor, through defendants, is currently pursuing an appeal of the judgment in the Criminal Case in the Court of Appeals in the Sixth Circuit (the "Appeal").

6. Defendants contend that all of the Deposit were funds owned by Mary Jane Newton and were thus not property of the bankruptcy estate.

7. Plaintiff contends the Deposit was entirely of funds owned by the Debtor.

8. Defendant contends that Plaintiff is unable to meet her burden of proof and that all of Plaintiff's evidence is circumstantial.

ECF No. 82. The parties also filed their trial briefs the same day. Plaintiff's Trial Brief, ECF No. 83 and Defendants' Trial Brief, ECF No. 85. ("Trustee's Trial Brief," and "Defendants' Trial Brief"). The Trustee's Trial Brief stated that "there is only one issue" to be determined at trial, "who owned the $51,000 deposited January 16, 2014 into the joint Fifth Third Bank checking account out of which $50,000 was wired that day to Defendants." Trustee's Trial Brief at 3. In their trial brief, the Defendants also only identified a single issue: "whether *the fee paid to Defendants* to represent the Debtor in her criminal proceeding is part of the Debtor's estate." Defendant's Trial Brief at 2 (emphasis added).

The parties filed the Amended Supplemental Joint Stipulation of Fact a week before trial. July 21, 2015, ECF No. 117. In the Amended Supplemental Joint Stipulations of Fact, the parties stipulated that: "1. The $50,000 used to pay the $50,000 Fee was deposited into the Fifth Third

Account on January 16, 2014 (the "Deposit"). 2. The Deposit was made in cash." *Id.*[3] The

Defendants filed an additional trial brief in which they alternated between arguing that the only

issue before the court was the "*ownership of the cash* used to make the deposit" that was wired to

the Defendants and "whether the *fee paid to Defendants* to represent the Debtor in her criminal

proceeding is part of the Debtor's estate." Defendants' Pre-Trial Opening Brief at 1, 2, July, 24,

2015, ECF No. 122 (emphasis added).

At the trial of the adversary proceeding the Trustee called nine witnesses. The Trustee

also sought to introduce a transcript of Newton's testimony from the Debtor's criminal trial to

support the proposition that the December 5, 2013 search of the Debtor's home resulted in the

seizure of all of the mother's money in the house. The bankruptcy court denied admission of the

transcript testimony, finding that it did not meet the former testimony exception to the rule

against hearsay.

Following the trial, the bankruptcy court issued a decision determining that the Attorney

Fee was not subject to turnover, stating that:

> The Trustee's "claim to estate property is no greater than the debtor's claim."
> Here, the Debtor has no claim to Defendants' fee. The Trustee offered substantial
> evidence that the Debtor was the source of the $50,000 transferred to Defendants,
> and that the $50,000 may have been estate property before its transfer. The
> Trustee did not, however, avoid that transfer; thus, no evidence the Trustee
> adduced could prove that the now transferred $50,000 fee is estate property.

Memorandum Opinion at 9, Aug. 10, 2015, ECF No. 136. (internal citations omitted). The

Trustee timely appealed to the Bankruptcy Appellate Panel.

---

[3]The Amended Supplemental Joint Stipulation of Fact amended the Supplemental Stipulation of Facts which was also designated by the Defendants. The Supplemental Stipulation of facts contained an additional stipulated fact—"3. Plaintiff has no evidence related to the ownership of the Deposit."— that was included in the stipulation due to a mistaken approval of the stipulation by the Trustee. July 21, 2015, ECF No. 116.

## DISCUSSION

**I.     The Trustee Did Not Meet Her Burden of Establishing that the Attorney Fee Is Property of the Estate, and therefore, the Bankruptcy Court Must Be Affirmed**

Section 542 of the Bankruptcy Code requires parties to turn over to a trustee property in their possession "that the trustee may use, sell or lease under section 363 of this title…" 11 U.S.C. § 542(a). Section 363 provides that a trustee "may use, sell or lease…property of the estate." 11 U.S.C. § 363(b)(1). The bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case…." 11 U.S.C. § 541(a)(1); *United States v. Whiting Pools, Inc.* 462 U.S. 198, 203, 103 S. Ct. 2309, 2312 (1983); *In re Bailey*, 380 B.R. 486 (B.A.P. 6th Cir. 2008). Since this case was converted from a Chapter 13 to a Chapter 7 case, § 348 defines property of the converted estate as "property of the estate . . . as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A).[4]

The Trustee, as the party seeking turnover, bore the burden of proving by a preponderance of the evidence that the Attorney Fee was property of the estate. *Bailey v. Suhar* (*In re Bailey*), 380 B.R. 486, 490 (B.A.P. 6th Cir. 2008) (citing *United States v. Chalmers (In re Wheeler),* 252 B.R. 420, 425 (W.D. Mich. 2000)). To prevail in such an action, the Trustee needed to prove that the property in question:

> (1) is or was in the possession, custody or control of an entity during the pendency of the case;
>
> (2) …may be used by the trustee in accordance with § 363 or exempted by the debtor under § 522; and
>
> (3) …has more than inconsequential value or benefit to the estate.

---

[4] The Trustee argues that the purpose of § 348(f) is to limit trustees' ability to bring into the chapter 7 estate wages and equity earned by the debtor while still in chapter 13. Case law and legislative history indeed support this view. *See Harris v. Viegelahn*, __ U.S. __, 135 S. Ct. 1829, 1837 (2015) ("Absent a bad-faith conversion, § 348(f) limits a converted Chapter 7 estate to property belonging to the debtor 'as of the date' the original Chapter 13 petition was filed. Postpetition wages, by definition, do not fit that bill."); H.R. Rep. No. 103-834, at 42–43, 1994 WL 545773, at *H10770–71. However, the bankruptcy court's decision did not require, or make, a determination of whether the Trustee met any of the requirements of § 348. Instead, the court held that even "[a]ssuming that the funds were property of the estate under § 348, they ceased to be property of the estate upon their wire transfer to Defendants in January 2014." Memorandum Opinion at 7. Since the Panel is affirming the bankruptcy court on the basis that the Trustee failed to meet her burden of proof to establish that the Attorney Fee was property of the bankruptcy estate, the Panel need not consider the Trustee's argument that § 348 would not apply.

*Id.* at 490. In this case there has been no dispute that elements 1 and 3 were present. The disputed issue was the second element–whether the Attorney Fee could be used by the Trustee or exempted by the Debtor. The bankruptcy court determined that this element was not present because the Trustee could not use the funds until the wire transfer of those funds was avoided under § 549 of the Code and the funds were brought back into the estate.

The Debtor's chapter 13 petition was filed on May 16, 2013 and the case was converted to chapter 7 on December 27, 2013. The parties stipulated that the Attorney Fee originated from $50,000 in cash deposited by Newton into the joint checking account shared with the Debtor and was wired to the Defendants on the same day, January 16, 2014. The bankruptcy court noted that "[t]he Trustee offered substantial evidence that the debtor was the source of the $50,000" transferred to the defendants. Memorandum Opinion at 9. However, the bankruptcy court determined that once the cash deposited into the mother's account had been wired to the Defendants, the "Debtor has no claim to Defendants' fee." *Id.*

The Trustee makes two arguments on appeal as to why the bankruptcy court erred in determining that the Attorney Fee was no longer property of the estate. The first is a theory that a trustee may pursue post-petition fraudulent conveyances without first avoiding the transfer under § 549, and the second is that under the Kentucky Rules of Professional Conduct, the estate retained an equitable interest in the Attorney Fee until it was earned. The Panel will consider these two theories in turn.

### A. Fraudulently Transferred Property Only Becomes Property of the Estate on Avoidance of the Transfer

The Trustee first argues that under *NLRB v. Martin Arsham Sewing Co.* the Attorney Fee paid to the Defendants is property of the bankruptcy estate and thus subject to turnover. 873 F.2d 884 (6th Cir. 1989), modified on reh'g, 882 F.2d 216 (6th Cir. 1989). In *Martin Arsham*, the National Labor Relations Board ("NLRB") sought to recover a debtor corporation's back pay obligation from an officer of the corporation on the theory that the officer received a fraudulent transfer of assets of the bankrupt company. The court held that the NLRB was precluded from attacking the transfer from the corporation to the officer as fraudulent because that transfer was not avoided in the corporation's bankruptcy for the benefit of all of the corporation's creditors. In

dicta, the court suggested that the fraudulently transferred funds were property of the estate while in the possession of the officer. *Id.* at 887, 88.

> In a further effort to consolidate all the debtor's assets and distribute them equally between creditors, the Bankruptcy Code contains provisions empowering the court or the trustee in bankruptcy to recover property belatedly, unlawfully, or fraudulently transferred by the debtor in an effort to place it outside the reach of creditors. Any effort to recover this property is essentially an action to recover property that belongs to the debtor. *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir.1983). For example, the section 544 "strong arm" provision of the Code allows the trustee to "step into the shoes" of a creditor in order to nullify transfers voidable under state fraudulent conveyance acts for the benefit of *all* creditors. See 11 U.S.C. § 544 (1982). Any property recovered is returned to the estate to be divided pro rata. *In re Johnson*, 28 B.R. 292, 297 (Bankr. N.D. Ill. 1983). The Supreme Court has stated that the definition of property of the estate includes "any property made available to the estate by other provisions of the Bankruptcy Code." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). *Thus, property fraudulently conveyed and recoverable under Bankruptcy Code provisions remains property of the estate and, if recovered, should be subject to equitable distribution under the Code.*

*Id.* at 887 (emphasis added).

*Martin Arsham* has been cited extensively for the proposition that because the *claims* for fraudulently transferred funds are property of the estate, creditors are barred from bringing fraudulent conveyance actions against third parties which could be brought by the trustee. *See e.g. Moyer v. ABN Amro Mortg. Grp.* (*In re Feringa*), 376 B.R. 614, 625 n.10 (Bankr. W.D. Mich. 2007) (finding that *Martin Arsham* was limited to transfers that could be avoided as fraudulent conveyances and not as preferential transfers). However, the Trustee's argument that *MortgageAmerica* and *Martin Arsham* allow trustees to pursue post-petition conveyances through a turnover proceeding without first avoiding the transfers under § 549 appears to be novel. No published opinion in the Sixth Circuit has cited *Martin Arsham* either in support of or to refute this argument.

Besides its apparent novelty, this argument is erroneous because it would apply the dicta in *Martin Arsham* to allow trustees to use § 542's turnover provision to supplant the remedy provided by § 549 to recover unauthorized post-petition transfers and, in the process, allow trustees to by-pass the time limitations provided by § 549(d) merely by alleging the property was

fraudulently transferred post-petition. Such use of § 542 to supplant the avoidance remedies provided by §§ 547, 548, and 549 and by-pass the limitations periods governing those provisions frequently has been held to be improper. *See Buckeye Check Cashing, Inc. v. Meadows* (*In re Meadows*), 396 B.R. 485 (B.A.P. 6th Cir. 2008) (finding that post-dated checks cashed post-petition ceased to be property of the estate upon negotiation and must be brought back into the estate under § 549). *See also Rosen v. Dahan* (*In re Hoang*), 469 B.R. 606, 620 (D. Md. 2012); and *Smith v. Mark Twain Nat'l Bank*, 805 F.2d 278, 293 (8th Cir. 1986) (post-petition transfer claim untimely under § 549 time limitation could not be recovered under § 542). It has also been held that recovery under § 542 is limited to assets that are "undisputedly property of the estate." *Liquidating Tr. of the Amcast Unsecured Creditor Liquidating Trust v. Baker* (*In re Amcast Industrial Corp.*), 365 B.R. 91, 122 (Bankr. S.D. Ohio 2007); *Wagner v. Pruett* (*In re Vaughan Co.*), 477 B.R. 206, 212 n.2 (Bankr. D.N.M. 2012). It is not until the transfer is avoided under § 549(a) that the property becomes property of the estate. *Westphal v. Norwest Bank* (*In re Missouri River Sand & Gravel, Inc.*), 88 B.R. 1006, 1012 (Bankr. N.D. 1988); *Hoang*, 469 B.R. at 619 ("Section 542(a) should not be interpreted or used in a manner that overlaps or conflicts with Section 549.") (citations omitted).

Further, the dicta in *Martin Arsham* and *MortgageAmerica* upon which the Trustee relies has come under a great deal of criticism both within the Sixth Circuit and beyond. *See FDIC v. Hirsch* (*In re Colonial Realty Co.*), 980 F.2d 125, 131 (2d Cir. 1992) ("If property that has been fraudulently transferred is included in the § 541(a)(1) definition of property of the estate, then § 541(a)(3) is rendered meaningless with respect to property recovered pursuant to fraudulent transfer actions.") (citations omitted); *In re Cincom iOutsource, Inc.*, 398 B.R. 223, 234 n.10 (Bankr. S.D. Ohio 2008) ("The *MortgageAmerica* holding ... has been recently criticized and called into question by several courts and commentators."); *Feringa*, 376 B.R. at 625 n.10 ("[i]t is difficult to read Section 541(a)(1) so broadly as to include potential recoveries of fraudulent conveyances, especially in light of subparagraphs (a)(3) and (a)(4) of that same section.").

For these reasons, the Panel rejects the Trustee's argument based on the dicta of *Martin Arsham*.

**B. The Trustee did not Meet Her Burden to Prove that the Attorney Fee Remained Property of the Estate under Applicable Rules of Professional Responsibility**

The Trustee argued in her appellate Reply Brief that in determining that the fee paid to the Defendants was no longer property of the estate, the bankruptcy court failed to consider the fact that the money wired to the Defendants was an attorney fee and under the Kentucky Rules of Professional Conduct[5] the Debtor would still have a claim to this fee and thus her interest in those funds remained property of the estate after being wired to the Defendants. Reviewing this determination *de novo*, the Panel affirms the bankruptcy court on this issue.

In *Meadows*, a debtor received a pay-day loan and in exchange gave the creditor a post-dated check to be used as payment towards the loan. 396 B.R. at 488. The debtor subsequently filed for bankruptcy protection and the creditor, without notice of the bankruptcy, presented the check for payment. *Id.* at 489. This BAP held that the post-petition presentment of the check constituted a transfer of the debtor's property interest in the underlying funds, and that those funds were no longer property of the estate unless the transfer was avoided under § 549. *Id.* at 498. Key to this analysis was the court's determination that the negotiation of the check resulted in a complete divestment of the debtor's interest in the accompanying funds under state law. *Id.* at 492. The *Meadows* court went on to distinguish *In re Sharon. Id.* at 493 (citing *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676 (B.A.P. 6th Cir. 1999)).

In *Sharon* this BAP held that refusing to turnover possession of the debtor's repossessed car after demand and adequate protection was tendered was an exercise of control over property of the estate in violation of the automatic stay. *Id.* at 681. Though the car was in the possession of the creditor, the court ruled that under state law the title of a repossessed car does not transfer until the debtor's right to redemption is foreclosed at auction. *Id.* at 682. Since the debtor retained ownership of the car in the creditor's possession, it remained property of the estate and refusal to turn over the car to the estate was a violation of the automatic stay. *Id.*

---

[5]Since the Trustee has presented this issue as an issue under Kentucky law, specifically the Kentucky Rules of Professional Conduct, the Panel's analysis of this issue will focus on those rules. However, during oral argument the Defendants argued that their conduct was also governed by California and Texas law since members of the Khouri Law Firm were licensed to practice law in California and Texas. The outcome, however, is not altered by which state's rules of conduct for lawyers is applied.

In this case, under *Sharon* and *Meadows*, the Attorney Fee would remain property of the estate to the extent that state law dictated that the Debtor retained an interest in it at the time the Defendants took possession of it. Given this, to what extent could the Debtor's interest in the Attorney Fee be alienated from the estate once it was in the Defendants' possession?

There is a current circuit split on the issue of whether the bankruptcy estate may recover from a debtor or transferee under § 542 if the debtor or transferee was in possession of property of the estate at some point during the pendency of the case, but no longer is in possession of that property at the time that the turnover adversary proceeding or motion is filed. *Compare Beaman v. Vandeventer Black, LLP* (*In re Shearin*), 224 F.3d 353 (4th Cir. 2000) (law firm, having possessed funds belonging to the debtor during the pendency of his bankruptcy case, must turn over profits, or their equivalent value, to the trustee, notwithstanding that the law firm no longer possessed the funds at the time the turnover proceeding was filed);[6] *with Brown v. Pyatt* (*In re Pyatt*), 486 F.3d 423 (8th Cir. 2007) (holding that section 542 may not be used to recover property of the estate from a third party if that property is no longer in the possession of the third party at the time the § 542 motion or adversary proceeding is filed). *See also* Richard E. Mikels & Ella Shenhav, *Is Possession a Requirement for Turnover?*, 32 Am. Bankr. Inst. J. 34 (2013). This BAP has adopted the majority approach, finding that § 542(a) may be used to recover property of the estate, or its value, that was in the possession of the debtor or third party during the pendency of the case from the debtor or third party even if that party is no longer in possession of the property. *See Bailey* v. *Suhar* (*In re Bailey*), 380 B.R. 486 (B.A.P. 6th Cir. 2008); and *In re Gardner*, No. 14-33734 2015 Bankr. LEXIS 1097 (Bankr. N.D. Ohio Apr. 3, 2015). No other circuit has adopted the Eighth Circuit's more restrictive rule.

---

[6]Besides the Fourth Circuit, the Seventh Circuit, Ninth Circuit and Tenth Circuit BAP also support this view. *See Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A.* (*In re USA Diversified Prods., Inc.*), 100 F.3d 53, 56 (7th Cir. 1996) (Section 542 "requires the delivery of the property *or the value of* the property. Otherwise, upon receiving a demand from the trustee, the possessor of property of the debtor could thwart the demand simply by transferring the property to someone else. That is not what the statute says ... and can't be what it means."); *Shapiro v. Henson*, 739 F.3d 1198 (9th Cir. 2014) (holding that property of the estate in the possession of the debtor or a third party can be recovered through § 542 as long as the property was in the possession of the debtor or third party at any time during the case); *Jubber v. Ruiz* (*In re Ruiz*), 455 B.R. 745, 752 (B.A.P. 10th Cir. 2011) ("This Court reaffirms…that current possession of estate property is not a required element for turnover pursuant to § 542(a).").

Under the majority approach, to the extent that the Debtor retained an interest in the Attorney Fee under applicable state law at the time it was wired to the Defendants, it remained property of the estate and could be recovered by the Trustee through use of § 542, even if it was subsequently earned and the transfer was made complete.

Although § 542(c) of the Code provides an exception to turnover liability, the *Meadows* court found that "§ 542(c) only protects the [transferor] who in good faith honored the check and paid with funds from the Debtor's account; it does not protect the transferee…." *Meadows*, 396 B.R. at 496 (citing *Franklin v. Kwik Cash of Martin* (*In re Franklin*), 254 B.R. 718, 721–22 (Bankr. W.D. Tenn. 2000); 5 *Collier on Bankruptcy* ¶ 549.03). By earning the fee, the Defendants would be completing the transfer from the Debtor to themselves by extinguishing the Debtor's equitable interest in the fee. Thus, the Defendants would only be acting as a transferee in this transaction, and so under the *Meadows* analysis, they would not receive the protection of § 542(c).

Taking these decisions together, under *Meadows*, when a post-petition transfer completely divests a debtor's interest in property, that property is not subject to turnover under § 542, but that transfer may still be avoided under § 549. However, under *Sharon*, if only possession of property of the estate has been transferred, the estate retains whatever state law interest that the debtor had in that property. And under *Bailey*, § 542 may be used to recover property of the estate subsequently transferred by a custodian to the extent that it was in the transferor's possession at some time during the pendency of the case. Since the Attorney Fee was wired to the Defendants post-petition, § 542 was available to compel the turnover of whatever interest the Debtor retained in the Attorney Fee at the time of the wire transfer. Thus, the final question to be answered is what interest in the Attorney Fee did the Debtor retain at the time of the wire transfer?

The Trustee did not argue that the Attorney Fee remained property of the estate under the Kentucky Rules of Professional Conduct until she filed her appellate Reply Brief. The Defendants did not request the Panel for a sur-reply to address the issue, so the argumentation on this subject was limited to the oral argument and the Reply Brief. Because of this, the parties did not develop the law or facts on several important questions regarding the Attorney Fee.

However, the Panel need not determine such issues because it was the Trustee's burden of proving by a preponderance of the evidence that the Attorney Fee was property of the estate. The only evidence presented to the bankruptcy court going to the fact that the Debtor retained an interest in the Attorney Fee was the fact that the property in question was legal fees; therefore, the Trustee failed to carry her burden.

Rule 3.130(1.5) of the Kentucky Supreme Court covers fees charged by attorneys. Comment 4 to Rule 3.130(1.5) clarifies that an attorney's terms of payment for fees "may require advance payment of a fee, but [the attorney] is obliged to return any unearned portion" under Rule 3.130(1.16(d)). Rule 3.130(1.16(d)) states that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as…refunding any advance payment of fee or expense that has not been earned or incurred." So, to the extent that, at the time of transfer to the Defendants, the Attorney Fee was a prepayment for legal services, the Debtor retained a right to refund of fees not yet earned by the Defendants.

However, the Trustee did not present evidence sufficient to determine to what extent the Attorney Fee wired to the Defendants might have been the prepayment of unearned legal fees, as opposed to an "earned upon receipt" attorney fee. Moreover, Rule 3.130(1.5(f)) of the Kentucky Supreme Court provides that "[a] fee may be designated as a non-refundable retainer." If the Attorney Fee was designated as such a fee, then the entire Attorney Fee could have been earned upon receipt by the Defendants, and thus the Debtor would have no right to a refund of the fees for the Trustee to pursue under § 542. Moreover, the laws of California and Texas also allow for similar non-refundable, or "true retainers." *See* Rule 3-700(D) of the California Rules of Professional Conduct ("A member whose employment has terminated shall: …(2) Promptly refund any part of a fee paid in advance that has not been earned. This provision is not applicable to a true retainer fee which is paid solely for the purpose of ensuring the availability of the member for the matter."); Tex. Comm. on Prof'l Ethics, Op. 431, 49 Tex. B.J. 1084 (1986) *available at* *http://www.legalethicstexas.com/Ethics-Resources/Opinions/Opinion-431* ("A retainer fee is a payment to compensate an attorney for his commitment to provide certain services and forego other employment opportunities. Non-refundable retainers are not inherently unethical, but must be utilized with caution.").

In order for the Trustee to prove that the Attorney Fee remained property of the estate, and, therefore, that the Trustee could use that property, the Trustee would have needed to produce evidence of the type of retainer agreement that existed between the Debtor and the Defendants, and the extent to which the Debtor retained an interest in those fees at the time of the wire transfer. However, the Trustee offered no evidence to this effect at trial.[7]

Because the Trustee submitted no evidence as to the nature of the agreement between the Defendants and the Debtor as to the Attorney Fee, or the extent to which the fees had been earned at the time of the wire transfer to the Defendants, the Panel finds that the Trustee did not meet her burden to show that the Attorney Fee remained property of the estate.

## II. The Bankruptcy Court was not required to Consider Avoidance of the Payment of the Attorney Fee under § 549 Since It Was Not Pled in the Complaint

The Trustee also made an abbreviated argument that the bankruptcy court was obliged to consider avoiding the transfer to the Defendants under § 549, even though there was no claim for avoidance under § 549 in the Complaint. The Panel rejects this argument.

The Trustee argues that the bankruptcy court made its decision under § 549 of the Code, and that the court "never requested briefing on the subject on which it based its judgment," and so "[i]n equity, because sua sponte judgment was made on arguments not presented, the Bankruptcy Court should have considered the entire record." Reply Brief at 4.

The bankruptcy court held that "'Section 542(a) . . . allow[s] the trustee to obtain possession of property *only* where the debtor otherwise had a right to possess the property.' The Trustee's 'claim to estate property is no greater than the debtor's claim.' Here, the Debtor has no claim to Defendants' fee." Memorandum Opinion at 8–9 (citations omitted). Contrary to the Trustee's argument, the bankruptcy court based its opinion on the requirements of § 542. The only extent to which the bankruptcy court's opinion was based on § 549 was to illustrate an alternative avenue the Trustee could have pursued.

---

[7]When asked at oral argument before the Panel whether the Trustee had sought the Defendants' retainer agreement, counsel for the Trustee acknowledged that the Trustee had not specifically pursued it.

Moreover, the Trustee offers neither statute nor case law to support her claim that the bankruptcy court should have considered avoiding the payment of the Attorney Fee under § 549. To the contrary, there was no basis for the bankruptcy court to determine whether the payment of the Attorney Fee should have been avoided under § 549 if that relief was not sought in the adversary complaint. Before trial, Federal Rule of Bankruptcy Procedure 7015 allows parties to amend pleadings as a matter of course within 21 days of service, or beyond 21 days with the written consent of the opposing party or through leave of the court. Fed. R. Bankr. P. 7015(a). Rule 7015 also gives parties the opportunity to amend pleadings during or after trial. A party may amend its pleadings if an opposing party objects to evidence not within the issues raised in the pleadings, while at trial. Fed. R. Bankr. P. 7015(b)(1). A party may also amend its pleading if an issue not raised by the pleadings is raised and litigated at trial by the consent of the parties. Fed. R. Bankr. P. 7015(b)(2). In this case, the Trustee made no effort to amend her complaint until after the trial and after the bankruptcy court issued its Memorandum Opinion. Further, the issue of avoidance under § 549 was not raised at trial. Therefore, none of the options for amending the Trustee's Complaint under Rule 7015 are available to the Trustee. The only claim litigated by the parties under the pleadings was turnover under § 542, and there was no legal basis for the bankruptcy court to consider whether she should avoid the payment of the Attorney Fee under § 549 as an unauthorized post-petition transfer.

### III.    Ownership of the Attorney Fee was at Issue Before the Bankruptcy Court

The Trustee argues that the bankruptcy court erred by deciding that title to the Attorney Fee had transferred to the Defendants. The Trustee reasoned that the focus of the adversary trial was to determine whether the Attorney Fee paid to the Defendants was paid from property of the estate, and that no arguments were made or evidence presented that title to the Attorney Fee had passed to the Defendants. The Panel is not persuaded by this argument; the ownership of the Attorney Fee was at issue in the trial and it was the Trustee's burden to prove that the Attorney Fee was property of the estate.

At the oral argument before the Panel, the Trustee began by quoting the Defendants' closing arguments at the trial. "There is a single issue in this case, and the issue is who owned the cash that was deposited…into Mary Newton's account on January 16, 2014 and almost

immediately transferred to Defendants….” Transcript Regarding Hearing Held 07/28/2015 at 123, Sept. 24, 2015, ECF No. 146. However, the statement of issues in the Defendants' Trial Brief was broader: “whether the fee paid to Defendants to represent the Debtor in her criminal proceeding is part of the Debtor's estate.” Defendants Trial Brief at 2. This statement of issue placed the question of whether the Attorney Fee held by the Defendants was property of the estate under § 541 as an issue to be determined at trial, contrary to the argument of the Trustee and the Defendants' statement in their closing arguments.

Though the parties stipulated that the Attorney Fee was paid from the cash deposited into Newton's account on the day of the wire transfer, there was no stipulation that if the cash was found to be property of the estate, that it would remain property of the estate after the wire transfer to the Defendants. While the Trustee's argument identified only a narrow issue in dispute, the issue identified by the Defendants was broader, and indeed, more accurately encompassed the issue that needed to be resolved by the bankruptcy court. At any rate, the bankruptcy court did not prevent the Trustee from arguing or introducing evidence that the Attorney Fee remained property of the estate post-transfer.

While the parties presented subtly different issues to be determined at trial, ultimately, it is the requirements of § 542 that dictate the issues to be resolved by the bankruptcy court. As discussed in Section A, under § 542, the moving party has the burden to show that the property to be turned over is property of the estate. The Trustee's argument that the Defendants neither argued, nor presented evidence at trial that the Attorney Fee was the Defendants' property reverses this burden.

Though the Trustee made conclusory statements that the Attorney Fee remained property of the estate, she offered the bankruptcy court no legal theory as to why the funds remained property of the estate despite being in the Defendants' possession. More importantly, the only evidence offered that the Attorney Fee was property of the estate while in the Defendants' hands was that the funds paid to the Defendants were to cover legal fees. However, evidence that the wired funds constituted an attorney fee was insufficient to establish the nature of the Debtor's or Trustee's interest in those funds in the hands of the Defendants without evidence of the nature of the fee arrangement between the Debtor and the Defendants. Without evidence as to the nature of

the fee arrangement between the Debtor and Defendants, the Trustee failed to establish that the Trustee could use the funds in question, i.e. that the Debtor or Trustee retained an interest in those funds, a necessary element of a turnover claim. Without establishing each and every element of the Trustee's claim, judgment was appropriately rendered against the Trustee. *See Wilkie v. Brooks*, 515 F.2d 741, 748 (6th Cir. 1975) (Judgment for trustee on a preference claim was reversed when trustee did not prove an essential element of his cause of action.).

## IV. The Bankruptcy Court Did Not Abuse Its Discretion in Determining That Newton's Testimony Was Inadmissible Hearsay

The final issue is whether the court erred in refusing to admit Newton's testimony from the criminal proceeding under the former testimony exception to the rule against hearsay. Evidentiary rulings are reviewed for an abuse of discretion. *United States v. Kerley*, 784 F.3d 327, 336 (6th Cir. 2015). Under this standard, a bankruptcy court's decision will only be disturbed if it "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Elec. Workers Pension Trust Fund*, 340 F.3d 373, 378 (6th Cir. 2003) (citation omitted). The Panel holds that the court did not abuse its discretion.

Hearsay is a statement, made outside the current trial or hearing, that a party offers as proof of the matter asserted in that statement. Fed. R. Evid. 801. Hearsay evidence is not admissible; however, the rules of evidence provide exceptions to this rule. Fed. R. Evid. 802. Federal Rule of Evidence 804 allows certain types of hearsay evidence when the person that made the statement is unavailable to testify in the current trial or hearing. The Trustee asserts that the transcript of Newton's testimony should have been admitted into evidence under Federal Rule of Evidence 804(b)(1), the exception for former testimony.

Federal Rule of Evidence 804(b)(1) allows testimony "given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one" so long as it "is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination." The Sixth Circuit's interpretation of "predecessor in interest" is generous and practical. A "previous party having like motive to develop the testimony about the same material fact is, in the final analysis, a predecessor in interest to the present party." *Clay v. Johns-*

*Manville Sales Corp.*, 722 F.2d 1289, 1295 (6th Cir. 1983) (quoting *Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179, 1187 (3d Cir. 1978)).

A party has no right to introduce former testimony under Rule 804 without showing a similar motive to develop the testimony. *United States v. Salerno*, 505 U.S. 317, 322, 112 S. Ct. 2503, 2507 (1992). "Because 'similar motive' does not mean 'identical motive,' the similar-motive inquiry, in my view, is inherently a *factual* inquiry, depending in part on the similarity of the underlying issues and on the context of the…questioning." *Id.* at 326 (Blackmun, J., concurring) (emphasis in original).

Though the bankruptcy court noted that the Trustee argued that Newton was unavailable to testify at trial, the Memorandum Opinion made no findings as to whether this was the case. There was no dispute that Newton's testimony was made at the Debtor's prior criminal trial. The bankruptcy court based its decision on the "predecessor in interest" element and sustained the Defendants' objection to the use of the prior testimony of Newton at the adversary trial. The bankruptcy court explained its decision more thoroughly in the Memorandum Opinion:

> The Trustee argued that Defendant Khouri was the predecessor in interest of the Trustee, because both Defendant Khouri (at the criminal trial) and the Trustee (in this matter) had similar motives to elicit from Ms. Newton testimony that there was no cash left in her house after the search. This argument fails because the Trustee sought to offer Ms. Newton's testimony against the Defendants. For the hearsay exception to apply, it is Defendants, not the Trustee, whose predecessor in interest must have had a similar motive to develop Ms. Newton's testimony at the criminal trial. The Trustee's predecessor is irrelevant.

Memorandum Opinion at 3–4.

At trial, the Trustee argued that the Defendants were the predecessor in interest to the Trustee in the criminal case. However, the bankruptcy court correctly noted that this is irrelevant because Newton's criminal trial testimony was being offered against the Defendants, not against the Trustee, and so it was the Defendants' predecessor in interest that was at issue. Memorandum Opinion at 4.

The bankruptcy court went further and considered, though not argued by the Trustee, whether the Defendants could have been a predecessor in interest to themselves. At the adversary

trial, the Defendants argued that their motive was to develop testimony on behalf of their client not on behalf of themselves, and so they would have no motive to develop testimony to exonerate themselves at the adversary trial. The bankruptcy court's Memorandum Opinion found that the Defendants' motives in the criminal case "were the precise opposite of their motives in this proceeding." *Id.*

On appeal, the Trustee argues that the bankruptcy court based its opinion on the fact the Defendants were the counsel in the criminal trial, but not a party. This is true only in part. In its decision, the bankruptcy court made the factual determination that "even if Defendants were 'parties' in the criminal case within the meaning of Rule 804, their motives in the criminal case were the precise opposite of their motives in this proceeding." Memorandum Opinion at 4. Thus, the bankruptcy court's decision was made independently of whether the Defendants were parties to the Debtor's criminal case.

The bankruptcy court was correct in its finding that Newton's testimony was offered against the Defendants and the court applied the correct law by holding that the "Trustee's predecessor is irrelevant." Because the bankruptcy court did not rely upon clearly erroneous findings of fact, improperly apply the governing law, or use an erroneous legal standard, the Panel affirms the bankruptcy court's determination.

## CONCLUSION

It was the Trustee's burden to show by a preponderance of the evidence that the money in question was property of the estate, but she introduced no evidence to establish that the Debtor retained an equitable right to or interest in the Attorney Fee. Though the bankruptcy court failed to do an analysis under the Kentucky Rules of Professional Conduct as to the nature of the fee arrangement between the Debtor and the Defendants, such an analysis could not be done without evidence regarding that arrangement. In having the burden to establish the Trustee's or Debtor's interest in the funds in the hands of the Defendants, it was the Trustee's burden to introduce evidence as to the nature of that fee arrangement. Having failed to introduce any such evidence, the Trustee failed to meet her burden of proof to establish the elements necessary to obtain a turnover order. For the reasons stated herein, the bankruptcy court's order is **AFFIRMED.**